No. 44,238

STATE OF KANSAS, *Appellee,* v. LAWRENCE YOUNG, *Appellant.*

(410 P. 2d 256)

Opinion filed January 22, 1966.

*Robert B. Yohe,* of Mission, argued the cause, and was on the brief for the appellant.

*James P. Davis,* Assistant County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Leo J. Moroney,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The defendant Lawrence Young, an indigent, and Maurice Sims were charged on information, tried by a jury and convicted of the crime of robbery in the first degree. (K. S. A. 21-527) Defendant moved for a new trial and the motion was overruled. The trial court entered judgment and sentenced defendant to confinement in the Kansas State Penitentiary for a term of not less than ten years nor more than twenty-one years. Defendant appeals from the order overruling his motion for a new trial, the

judgment, sentence and order of commitment of the district court of Wyandotte county.

On May 26, 1964, a complaint was filed and a warrant issued charging the defendants with the commission of the crime of robbery in the first degree on May 25, 1964, in Wyandotte county. A preliminary examination was had on June 12, 1964. The examining magistrate made appropriate findings and orders binding the defendants over for trial in the district court of Wyandotte county. On June 22, 1964, the county attorney filed an information charging the defendants with the crime of robbery in the first degree.

On September 14, 1964, the district court pursuant to K. S. A. 62-1304 appointed Charles W. Thompson, a member of the Wyandotte county bar, as counsel for the defendant Lawrence Young. On September 15, 1964, the trial of defendant and codefendant Sims commenced and concluded during the afternoon of September 17, 1964, when the jury returned a verdict of guilty as to both defendants. The defendant Young is presently an inmate of the Kansas State Penitentiary at Lansing, Kansas.

For purposes of our consideration in this opinion the evidence may be summarized briefly. The defendants were charged and tried for the robbery of a Milgram Food Store, located at 1270 Merriam Lane, in Kansas City, Kansas. The evidence of the state was developed by the testimony of several employees of the store who were eye witnesses to the robbery and several officers of the Kansas City, Kansas, police force. About 7:40 on the morning of May 25, 1964, according to the testimony of the state's witnesses, Young and Sims accosted a store employee, McCain, as he was checking in a delivery man at the rear door of the store. Defendants told McCain that this was a hold up. After gaining admittance to the store Young and Sims took charge of the employees and deliverymen who were in the store at the time and directed them at gun point to place themselves in two piles in a crisscross manner in a store room in the rear of the store. Defendants were informed by the store manager that the safe could not be opened until nine o'clock and the defendants kept the store employees and deliverymen under gun point surveillance until that time. At nine o'clock the safe was opened by the store manager and a burglar alarm system was simultaneously set off. The Kansas City, Kansas, police department was notified immediately as well as the Kansas Highway Patrol. A member of the highway patrol

and thirty or forty members of the Kansas City, Kansas, police department were dispatched to the store. In the meantime the defendants saw the police officers arriving at the scene. According to the state's witnesses the defendant Young removed his coveralls and face mask and put on a white jacket and white apron which had the name of Milgram Food Store thereon and commenced to pose as an employee of the store. The defendant Young was apprehended as he walked out the rear door of the store. A .38 caliber revolver was found upon his person. After both of the defendants were in custody they were identified by the twelve or more witnesses who had been restrained by them. It appears from the record that defendant Young remained incarcerated in the county jail from the time of his arrest until after his trial and removal to the penitentiary.

On November 5, 1964, defendant Young filed an affidavit of poverty, motion to proceed in forma pauperis, motion for appointment of counsel and a motion for records. On November 12, 1964, the motions were granted by the district court of Wyandotte county and Robert B. Yohe, a member of the Wyandotte county bar, was appointed as counsel to conduct an appeal to this court on behalf of defendant Young.

Five specifications of error are assigned by defendant-appellant in this appeal. The first two assignments of error merit our consideration herein.

For his first point appellant contends the trial court erred in overruling his motion that an attorney other than Charles W. Thompson, who represented codefendant Sims, be appointed to represent appellant.

Secondly, appellant asserts the trial court erred when it overruled his motion for additional time in which to prepare his defense.

The facts and circumstances relative to these two points are developed in a pre-trial colloquy between appellant, court appointed counsel Thompson, county attorney Foster and the court. The colloquy took place before the court, outside the presence of the jury, the morning of the commencement of the trial. The record discloses the following:

"THE COURT: You are Mr. Young?

"DEFENDANT YOUNG: Yes. Your Honor, I would like to have more time with this case, and I would like to have another attorney, since I was only

appointed Mr. Thompson yesterday, and I have not had a chance to confer with him pertaining to the case and map out a possible defense.

"The Court: He hasn't been your attorney all along?

"Defendant Young: In the preliminary hearing, but the preliminary hearing was waived to the District Court, and I was only appointed Mr. Thompson yesterday.

"Mr. Thompson: I didn't represent Mr. Young in the preliminary, I represented Mr. Sims.

"Mr. Foster: If it please the Court, Mr. Thompson, in representing Mr. Sims in their preliminary hearing, due to the facts and so forth concerning what the evidence would be concerning Mr. Young, as well as Mr. Sims, in Mr. Thompson's preparation for this trial today, in preparing for the one, he naturally must prepare for both.

"Both of these people were caught inside this supermarket, and you can not very well prepare one without naturally knowing all the facts in preparing for the other defendant in the same case.

"Defendant Young: Your Honor, I am afraid the prosecutor is looking at it superficially. He just states whereas both of the defendants were caught inside the store, which is incorrect and—

"Mr. Foster: One was caught inside and the other one was caught coming out the door, let's put it that way, is that correct?

"Defendant Young: No.

"The Court: Mr. Young, this happened, allegedly, back in May. What have you done since May towards getting a lawyer?

"Defendant Young: Well, I have been detained in the jail, and I have been unable to obtain a lawyer, so only yesterday I was appointed Mr. Thompson.

"The Court: Weren't you out on bond awhile?

"Defendant Young: No.

"The Court: You have been in jail all the time?

"Defendant Young: All the time.

"Mr. Thompson: He has been a fugitive for some time, Your Honor, from the Liberty, Missouri court and from the Federal Court, but he has been in our jail all the time since May.

"Defendant Young: Since May, yes, I have.

"The Court: Have you talked with Mr. Thompson previously about this?

"Defendant Young: No, the last time I spoke to Mr. Thompson was in the preliminary hearing, which I waived.

"The Court: That was in June?"

"Defendant Young: Yes, I believe so.

"The Court: And you haven't talked to a lawyer since June?

"Defendant Young: No, I haven't.

"The Court: There will be a few minutes before the jury gets here. Go ahead and talk to him now, and if you can come up with something concrete as to why there should be some delay, all right, but you go ahead and talk to him now, and you are going to have to come up with something concrete—some concrete reason as to why you need time.

"Defendant Young: My reason would be ineffective assistance of counsel.

"The Court: What do you mean?

"Defendant Young: That I haven't had time to map out a possible defense with an attorney, and therefore it would not provide me enough time to map out a defense in a few minutes. There are witnesses which I would like to have, and within an hour or so I don't believe Mr. Thompson could do it, or any other lawyer at this time.

"Mr. Thompson: Your Honor, I have also advised Mr. Young of certain action I think he ought to take and he disagrees with me on this action, and I believe there is some difference between counsel and client in this respect.

"Mr. Foster: If it please the Court, if this defendant does not go to trial today, it will be utterly impossible for this defendant to be tried in this term of court, which means he will necessarily sit in jail until after Christmas. I see no reason for us feeding this man for this long period of time. Since this man was apprehended in the store, or coming out of the store, I fail to realize what kind of a defense he can map out, if given all the time in the world, that could effectively help his case.

"Now, he has been in jail since May. He was in a preliminary hearing which he saw fit to waive on his own or with the advice of some counsel, I don't know whether it was Mr. Thompson or who it was. He has expressed no desire to the jailer, or to the Sheriff's Office, and has sent no word to my office that he desires to have an attorney. I believe this is a little bit late. I think the people of Kansas and the expense and all involved are to be considered, as well as this defendant's wishes.

"Defendant Young: Whereas, that might be true, Your Honor, facing time in the penitentiary and not having a proper counsel, whereas I can have a proper defense, it is nothing just to be shunned. I was only appointed Mr. Thompson yesterday and I have not had time, as I have stated before, to map out a defense to which the prosecutor already condemns me and finds me guilty of. I am not worried about how much time I may have to spend in jail, but right now I am an indigent person, so I think I should have proper defense.

"Mr. Foster: If Your Honor please, as to that request for appointment of Mr. Thompson as of yesterday, I believe the record will reflect this man said Mr. Thompson represented him at the preliminary hearing and advised him at the preliminary hearing. I think the record will reflect that.

"Defendant Young: The preliminary hearing, true. Since then I have been unable to retain Mr. Thompson and I have not spoken to him since then. At the preliminary hearing, it was a waiving of my choice and therefore Mr. Thompson was not familiar with the facts of my case, and I am without counsel—or was without counsel until yesterday.

"Mr. Foster: He did not express a desire for other counsel.

"The Court: The request for postponement will be denied. Will you bring us in a panel of jurors?

"Defendant Young: Then, sir, if I am forced to go to trial, I would like it recorded in the record that I do so under protest.

"The Court: The record reflects that Mr. Young.

"Mr. Thompson: Your Honor, I would like to clarify one thing for the record, too. First of all, regardless of what Mr. Young says, I did not represent Mr. Young in the preliminary of this action; I represented Maurice Sims, and he is the only one I have represented throughout. I filed a

habeas corpus, which will reflect that I filed it only on behalf of Maurice Sims and not on behalf of Mr. Young. I was advised of representing Mr. Young at approximately 3:00 p. m. yesterday by Marie Cahill, the secretary in the County Attorney's Office, and I have not talked to this man at all prior to today and since the preliminary.

"THE COURT: Very well, the record is clear."

It appears from the colloquy that the court was apparently under the misapprehension that Mr. Thompson had acted as appellant's attorney at the preliminary hearing. This is further indicated by a letter of the trial court to Mr. Thompson, dated September 5, 1964, advising Mr. Thompson that the case of State v. Sims and Young would be tried before a jury on September 15th at 9:30 a. m. The letter notwithstanding, we must conclude from the record that Mr. Thompson was not appointed as counsel for Young until the afternoon of September 14th. The above quoted colloquy also reveals that the first opportunity available to Young to consult with his counsel occurred during the pre-trial discussion in which "a few minutes before the jury gets here" was allotted defendant and his counsel to come up with a "concrete reason" for a postponement. The postponement being denied, those same "few minutes" constituted the time allotted to defendant and his counsel for trial preparation. The colloquy also reflects that Mr. Thompson was appointed over the objection of Young. It is also to be concluded from the statement of Mr. Thompson that there was a disagreement between counsel and client as to actions counsel had advised.

In view of the record before us the contentions of appellant must be considered within the applicable provisions of the constitution and statutes of Kansas.

Section 10 of the Bill of Rights of the Kansas Constitution, and subsequently the legislature and the courts of this state have carefully safeguarded the rights of accused citizens since the advent of statehood. Section 10 of the Bill of Rights provides:

"In all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel; to demand the nature and cause of the accusation against him; to meet the witness face to face, and to have compulsory process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. No person shall be a witness against himself, or be twice put in jeopardy for the same offense."

From the time of the first territorial legislature in 1855 our code of criminal procedure has provided in substance that if a person about to be arraigned for a felony be without counsel it was the

duty of the court to assign counsel at his request. Both the legislature and this court have spoken on numerous occasions to further implement the constitutional mandate found in Article 10 of the Bill of Rights.

The present directive of the legislature is to be found in the provisions of 62-1304, *supra*. The provisions of the statute most pertinent to our discussion here are as follows:

". . . Counsel employed by or appointed for the accused shall have free access to him at reasonable hours for the purpose of conferring with him relative to the charge against him and advising him respecting his plea, and for the preparation of his defense, if a defense is to be made. It is the duty of an attorney appointed by the court to represent a defendant, without charge to defendant, to inform him fully of the offense charged against him and of the penalty therefor, confer with available witnesses, cause subpoenas to be issued for witnesses necessary or proper for defendant, and in all respects to fully and fairly represent him in the action."

We shall first consider the denial of defendant's request for counsel other than Mr. Thompson who was representing co-defendant Sims. This point seems to be of first impression in Kansas as there appears to be no reported case precisely in point with the facts and circumstances in the instant case. While the facts were dissimilar from those at hand this court clearly stated its attitude on the subject in the case of *State v. Leigh*, 178 Kan. 549, 289 P. 2d 774:

"An attorney owes to his client fidelity, secrecy, diligence and skill and an attorney cannot undertake to represent conflicting interests or to discharge inconsistent duties which may cause a breach of the trust due his client, no matter how honest may be the attorney's motives or intentions." Syl. § 1.

The care required of an attorney in representing multiple clients was recently considered in the civil case of *Stump v. Flint*, 195 Kan. 2, 402 P. 2d 794, wherein it was stated in syllabus § 6:

"An attorney should act with great circumspection in representing multiple clients where the possiblity exists that their interests may conflict or become adverse."

While there was no specific showing of a conflict of interest between defendant Young and codefendant Sims in the pre-trial colloquy, the testimony of Young at the trial indicates that the possibility of such a conflict should have been anticipated. Young testified that early in the morning of the robbery he was drinking coffee in a coffee shop at 26th and Troost where he met a person, George Evans, who held a "pretty hard grudge" as a result of a

gambling incident in California and that Evans was with another fellow named Harold and one named Wallace. Young testified that George Evans put a gun on him and took him to where his car was parked, the next block over from Troost. At this point, according to Young's testimony, Evans began to talk about this grudge and took $200.00 out of Young's billfold. Young further testified that Evans, together with Wallace and Harold, drove him in his car down around the vicinity of the Colgate Palmolive Peet factory. There they told Young to get out of his Buick car and to come on back to a late model white Pontiac car. The trunk of the Pontiac was opened and Young was put in the trunk of the Pontiac. Young testified:

". . . he had a key and opened the trunk of the Pontiac, and put me in the trunk of the Pontiac, and I didn't know actually where I was going or what he was going to do with me, but I do know that he was pretty angry with me, and all I know is I rode for quite awhile until the next thing I knew was when they let me out of the trunk of the car. That was about ten minutes before the firing at this store, before these gunshots were fired at the store.

"Q. When they let you out of the trunk, where were you?
"A. I was at the Milgram Store, but I didn't know just—
"Q. Where at the Milgram Store?
"A. At the rear of the Milgram Store—rear door."

Young does not name codefendant Sims in his testimony as shown in the record, nor is the defense of Sims disclosed. However, the conclusion must be drawn from the testimony of Young, whether true or false, that a conflict of interest existed between the codefendants, the possibility of which should have been anticipated by court and counsel.

The Supreme Court of the United States considered the matter here involved in a similar situation in the case of *Glasser v. United States*, 315 U. S. 60, 86 L. Ed. 680, 62 S. Ct., 457, the only factual difference being that Glasser, the complaining defendant, was forced to share his retained counsel, who was appointed by the court to represent a codefendant. Language of the court is applicable here.

"To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretske is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. Cf. *Snyder v. Massachusetts*, 291 U. S. 97, 116; *Tumey v. Ohio*, 273 U. S. 510, 535; *Patton v. United States*, 281 U. S. 276, 292. And see *McCandless v. United States*, 298 U. S. 342, 347. Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the

defense of an accused by insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court." (pp. 75, 76.)

In view of the objection of the accused and the remarks of his appointed counsel as reflected in the record, measured by the requirement of "full and fair representation" as set out in 62-1304, *supra,* we are constrained to hold that error was committed in denying defendant's request for counsel other than Mr. Thompson. The requirement of the statute to appoint counsel includes the proviso that counsel have no interest adverse to accused which would interfere with a fair presentation of his defense.

In considering the second assignment of error, *i. e.,* the trial court's denial of defendant's request for a postponement, we are fully cognizant of the long established rule in this jurisdiction that continuances are within the discretion of the trial court. However, when the circumstances surrounding the request for postponement in this case are measured against the directives of 62-1304, *supra,* we are forced to conclude that discretion was abused in the trial court's denial. The performance of the duties prescribed for court appointed counsel in the statute is incompatible with the few minutes allotted for trial preparation as reflected by the record in this case. The right to counsel with full and fair representation as spelled out in 62-1304, *supra,* includes the right to have sufficient time to advise with counsel and to prepare a defense.

The duty of the court to appoint counsel, imposed by the statute, is not discharged by an assignment of counsel at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case.

In *State v. Oldham,* 178 Kan. 337, 285 P. 2d 775, we stated:

"The constitutional right of an accused to counsel is a matter of substance not form, and it is the solemn duty of a trial court to make sure that representation is not an empty gesture, but is a fulfillment of the spirit and purpose of the constitutional mandate. (*Willis v. Hunter,* 166 F. 2d 721.)" (p. 338.)

In *Powell v. Alabama,* 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527, the United States Supreme Court said in syllabus § 4:

"The right of the accused, at least in a capital case, to have the aid of counsel for his defense, which includes the right to have sufficient time to advise with counsel and to prepare a defense, is one of the fundamental rights guaranteed by the due process clause of the Fourteenth Amendment."

From the facts and circumstances as disclosed by the record in this case, considered within the purview of 62-1304, *supra*, we must conclude that the discretion of the trial court was abused in denying defendant's requests for other counsel and for a continuance.

Other contentions of defendant have been considered and are found to be without merit, further discussion thereof is unnecessary in view of what has been stated.

The verdict of the jury and the judgment and sentence of the trial court are vacated and set aside and the cause is remanded to the district court. The appellant is ordered to be returned to Wyandotte county by the warden of the Kansas State Penitentiary, where appellant is now imprisoned, and delivered into the custody of the sheriff of Wyandotte county for further proceedings in harmony with this opinion.