No. 44,678

STATE OF KANSAS, *Appellee*, v. LAWRENCE YOUNG, *Appellant*.

(434 P. 2d 820)

Opinion filed December 9, 1967.

*Edward G. Collister, Jr.*, of Kansas City, argued the cause, and *Gerald T. Elliott*, of Kansas City, was with him on the brief for appellant.

*James P. Davis*, Assistant County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, and *Frank D. Menghini*, County Attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: On June 22, 1964, the county attorney of Wyandotte County filed an information with the clerk of the district court, charging the defendant-appellant, Lawrence Young, with the crime of robbery in the first degree. (G. S. 1949, 21-527, now K. S. A. 21-527.)

On the afternoon of September 14, 1964, the district court appointed Charles W. Thompson, a member of the Wyandotte County Bar, to represent the defendant pursuant to K. S. A. 62-1304 and 1304a. The following morning, September 15, 1964, the trial of the defendant and his co-defendant, Maurice Simms, commenced. The defendant objected to the appointment of Thompson to represent him, since Thompson had also been appointed and was acting as counsel to co-defendant Simms; further, that since he had only the previous afternoon to confer with Thompson to prepare his defense, he was being denied due process of law. The defendant requested the appointment of another attorney, and for a continuance of the trial to afford him additional time to prepare his defense. His requests were denied, and the trial began.

On September 17, 1964, the jury returned a verdict finding the defendant guilty of robbery as charged in the information. A motion for a new trial was filed and heard by the district court and overruled. On September 26, 1964, the defendant was sentenced to confinement in the Kansas State Penitentiary for a term of not less than ten years nor more than 21 years, pursuant to K. S. A. 21-530.

A direct appeal was perfected to this court which was docketed No. 44,238, and is reported as *State v. Young*, 196 Kan. 63, 410 P. 2d 256. The opinion, filed January 22, 1966, is incorporated herein by reference, where the facts of the crime, as disclosed by the evidence, were fully detailed by Justice Kaul. This court concluded the district court erred in overruling the defendant's motion for a new trial, in that it abused its discretion in denying his requests for other counsel and for a continuance. The concluding paragraph of the opinion states:

"The verdict of the jury and the judgment and sentence of the trial court are vacated and set aside and the cause is remanded to the district court. The appellant is ordered to be returned to Wyandotte county by the warden of the Kansas State Penitentiary, where appellant is now imprisoned, and delivered

into the custody of the sheriff of Wyandotte county for further proceedings in harmony with this opinion." (l. c. 72.)

Following the defendant's return to Wyandotte County, counsel was appointed to represent him and a new trial was granted. Commencing on April 5, 1966, the defendant was retried on the charge of robbery in the first degree as contained in the information filed on June 22, 1964. On the following day, April 6, 1966, the jury returned its verdict, finding the defendant guilty. However, prior to the new trial and for the first time on March 4, 1966, the state announced its intention to invoke the Habitual Criminal Act.

On April 20, 1966, the defendant's motion for a new trial was overruled and the state presented evidence of his previous conviction of felony. The district court sentenced the defendant to a term of "not less than 20 years nor more than 42 years" pursuant to K. S. A. 21-530 and the Habitual Criminal Act (K. S. A. 21-107a), and gave him credit against the sentence imposed for all time served in the Kansas State Penitentiary under the sentence imposed on September 26, 1964—the sentence directed to be set aside by this court in *State v. Young,* supra.

Thereafter, the defendant duly perfected this appeal and he was authorized to proceed *in forma pauperis.* Edward G. Collister, Jr., a member of the Wyandotte County Bar, was appointed to represent the defendant in presenting this appeal, and he performed his duties with ability and diligence.

The appellant contends the practical effect of what occurred is that his sentence was doubled because he successfully demonstrated to this court that his right to counsel as guaranteed by Section 10 of our Bill of Rights and K. S. A. 62-1304 had been violated at his first trial. He argues that the application of the Habitual Criminal Act to his conviction upon a second trial after a successful appeal, when the Act was not applied or requested prior to his first trial, constitutes a violation of his right to due process of law and equal protection of the law guaranteed by the Fourteenth Amendment. He maintains that harsher sentencing following a new trial is an infringement upon (1) the right or privilege to appeal; (2) the right to a fair trial, and (3) the equal protection of the law.

With respect to the first point, he asserts that harsher sentencing upon retrial operates as an unreasonable condition or limitation on the right to appeal, and violates notions of fair play and substantial justice inherent in the due process clause. On the second point,

he argues that every defendant has a constitutional right to a "fair trial"; that the privilege of appealing a conviction is to afford the defendant an opportunity to have appellate review of any trial errors and constitutional defects, and is his method of enforcing his right to a fair trial; that if a defendant's original conviction was not constitutionally valid, as it was not in his case, the effect of a harsher resentencing is to punish the defendant for seeking his constitutional right to a fair trial and denies him due process of law. On the third point, he argues that the harsher sentence imposed following a new trial violates the equal protection of the law clause in that there is no basis for distinguishing as a class those persons who successfully attack criminal convictions by subjecting them to harsher punishment, since the only group of persons to whom harsher resentencing is applicable are those, like the defendant, who successfully challenge their original convictions; that the sentence of all other criminals are not subject to such increase, and that it is an unreasonable classification to apply possibility of increased sentences to those who seek successfully to protect their constitutional rights.

In advancing his points, the defendant concedes he was given notice of the state's intention to invoke the Habitual Criminal Act prior to the commencement of his new trial; that discretion may be utilized in determining to whom the Act may be applied; that no provisions of either the state or federal constitution with respect to double jeopardy are involved, and that the Habitual Criminal Act is not unconstitutional.

We have examined the authorities relied upon by the appellant in light of the factual situation here presented, and conclude they are not in point and his contentions cannot be sustained.

When the defendant's sentence of September 26, 1964, was directed by this court to be set aside in *State v. Young, supra,* the district court sustained the defendant's motion for a new trial. The new trial commenced on April 5, 1966, and it was a trial *de novo.* K. S. A. 62-1601 reads:

". . . A new trial is a re-examination of the issues in the same court . . ."

and K. S. A. 62-1602 reads:

". . . The granting of a new trial places the parties in the same position as if no trial had been had; the former verdict cannot be used or referred to either in evidence or argument."

The statutes are salutary and serve a legitimate state interest. Their purpose is designed to promote fairness and orderly procedure of criminal litigation. Where a defendant files a motion for a new trial and the same is granted by the district court or, as here, by direction of this court on appellate review, the state and defendant are placed in the same position as if no trial had been had; at the new trial all of the testimony must be produced anew, and the new trial must stand or fall on its own merits. This is the construction placed upon the statutes in 1871 in *State v. McCord,* 8 Kan. (2d ed.) * 232, and the same has been adhered to without deviation ever since. (*State v. Hart,* 33 Kan. 218, 6 Pac. 288; *State v. Terreso,* 56 Kan. 126, 42 Pac. 354; *In re Christensen,* 166 Kan. 671, 203 P. 2d 258; *State v. Neff,* 169 Kan. 116, 125, 218 P. 2d 248; *State v. Hess,* 180 Kan. 472, 478, 304 P. 2d 474; *Cox v. State,* 197 Kan. 395, 399, 416 P. 2d 741.) See, also, 24 C. J. S., Criminal Law, § 1426, p. 16, and 39 Am. Jur., New Trial, § 217, p. 208.

The defendant contends that the harsher resentencing upon retrial operates as an unreasonable condition or limitation on the right to appeal and violates due process of law. The point lacks substance. There is no constitutional right to appeal a state criminal conviction given the defendant by either the state or federal constitution. In *Ware v. State,* 198 Kan. 523, 426 P. 2d 78, it was held:

"The Constitution of Kansas does not grant or guarantee to a defendant convicted of a criminal offense the right to appeal to the supreme court." (Syl. ¶ 2.)

"The right to appeal a state criminal conviction is not a fundamental right guaranteed by the Constitution of the United States, nor is it a requisite of due process of law guaranteed to any person by the Fourteenth Amendment." (Syl. ¶ 4.)

In this state the right to appeal is statutory and the defendant must take it on the terms provided by the statute. Such a right is a privilege, a matter of grace which the state can extend or withhold as it deems fit, or which may be granted on such terms and conditions as it sees fit. The only exception to the foregoing is that the state may not discriminatorily apply its statutes relating to criminal appeals. As hereafter indicated, the defendant's right to appeal was not discriminatorily applied by the harsher resentencing so as to constitute a violation of the equal protection clause.

The defendant's argument that the practical effect of the second trial, resulting in a much longer sentence than he received at the first trial, denies due process of law, is likewise without merit. The

gist of his argument is that he had a vested right in the term of the sentence imposed following the first trial and that the setting aside of the verdict, judgment and sentence and the granting of a new trial, placed a ceiling upon the sentence which could be imposed if he were again convicted. Indeed, there is a ceiling on the term of the sentence which may be imposed following the second trial, but that ceiling is governed by applicable statutes of this state, one of which is the Habitual Criminal Act. As indicated, the defendant concedes that discretion may be utilized in determining to whom the Habitual Criminal Act may be applied. In *Addington v. State,* 198 Kan. 228, 424 P. 2d 871, it was held:

"In this jurisdiction, it is the duty of the county attorney to conduct criminal prosecutions on behalf of the state, and all steps in the trial are likewise under his supervision and control, including the exercise of discretion to invoke the Habitual Criminal Act in a proper case, upon reasonable notice of the state's intention to do so.

"The good faith of the county attorney is a material issue bearing upon his motives when invoking the Habitual Criminal Act, since the exercise of discretion in the performance of his duties implies conscientious judgment rather than arbitrary action, and takes account of the law and particular circumstances of each case. Such discretion must be exercised fairly, wisely, and in accordance with the established principles of law; and includes the right to select a course of action, not willfully or in bad faith, but only with respect to what is right under the circumstances.

". . . the petitioner has the burden of establishing by a preponderance of the evidence his claims that the county attorney acted willfully, deliberately and in bad faith when invoking the Habitual Criminal Act. . . ." (Syl. ¶¶ 3, 4 and 5.)

In *Gladen v. State,* 196 Kan. 586, 413 P. 2d 124, it was said:

". . . There is a presumption that a public official will act fairly, reasonably and impartially in the performance of the duties of his office. *Lyerla v. Lyerla,* 195 Kan. 259, 403 P. 2d 989; *Sutherland v. Ferguson,* 194 Kan. 35, 397 P. 2d 335; *State v. Emory,* 193 Kan. 52, 391 P. 2d 1013, cert. den. 379 U. S. 906, 13 L. Ed. 2d 179, 85 S. Ct. 200.) . . ." (1. c. 590.)

While the record is silent on the point, the appellant states, "that nothing new occurred in the second trial which would justify a conclusion in the second trial that subsequent to the second conviction, society needed to be protected by an application of the Habitual Criminal Act." In answer to the assertion, the county attorney states, "[a]n analysis of the crime condition in Kansas City, Kansas, is quite revealing in that during the period from the time of the incarceration of the appellant until the second trial, no

robberies of this type, and we mean to say hooded bandit types of robberies, occurred. This was an indication to the law enforcement officers of this area that the main culprits were in custody and could not perpetrate such robberies." Morever, the county attorney further states in his brief that it was only after the defendant was first convicted that the state became aware of his prior felony conviction.

As indicated, the defendant has the burden of establishing by a preponderance of evidence, his claim that the county attorney acted willfully, deliberately and in bad faith in invoking the Habitual Criminal Act, and it is sufficient to say that he has completely failed to sustain that burden.

While the case of *State v. Fountaine,* 199 Kan. 434, 430 P. 2d 235, involved a point different than is presented in the instant case, we think the principle of law announced is analogous and should be applied. The *Fountaine* case involved an invalid sentence originally imposed pursuant to the Habitual Criminal Act upon defendant's plea of guilty to burglary in the second degree and larceny, and the imposition of a valid sentence in substitution therefor which exceeded the term of the original invalid sentence. In the opinion it was said:

"We believe the rule generally to be that where an original sentence is invalid a legal sentence may be imposed in substitution therefor, even though the latter sentence enlarges the punishment, so long as the substituted sentence does not exceed the maximum sentence allowed by law for the offense of which the defendant was convicted. In *King v. United States,* 98 F. 2d 291, 295, the court said:

" 'We think the law remains as the Murphy case [*Murphy v. Massachusetts,* 177 U. S. 155, 44 L. Ed. 711, 20 S. Ct. 639] established it that when a void, or merely voidable, sentence has been vacated as the result of the prisoner's own demands, he cannot complain if his second sentence increases his punishment.'

"To like effect is *United States v. Howell,* 103 F. Supp. 714 where it was said:

" 'Even if the sentence had been increased, the law is settled that this may be done, on the theory that a void sentence in contemplation of law is nonexistent.' (p. 718.)

"See, also, *Mathes v. United States,* 254 F. 2d 938; *United States v. Bozza,* 155 F. 2d 592, aff'd 330 U. S. 160, 91 L. Ed. 818, 67 S. Ct. 645; *Tilghman v. Culver,* Fla., 99 So. 2d 282, cert. den., 356 U. S. 953, 2 L. Ed. 2d 845, 78 S. Ct. 918; *Boner v. Boles, Warden,* 148 W. Va. 802, 137 S. E. 2d 418.

"A qualification of the rule is generally recognized by recent authorities. Where an invalid sentence is set aside and a legal sentence is imposed, a prisoner is entitled to be credited with the time he has already served on the

void sentence. We find the modern view stated in 5 Wharton's Criminal Law and Procedure, § 2216, p. 433:

" 'By what appears to be the modern view, one who has served in prison under a sentence is entitled to have time so served credited when, because the original sentence was invalid, it is necessary that he be resentenced.'

"See, also, Anno. 35 A. L. R. 2d 1283, pp. 1288-1291." (l. c. 439.)

Applying the foregoing rule to the sentence here imposed, it is observed that the defendant was sentenced in accordance with the provisions of K. S. A. 21-530 and the Habitual Criminal Act, to a term not exceeding the maximum sentence allowed by law for the offense of which he was convicted. Moreover, the district court gave the defendant credit against the sentence imposed on April 20, 1966, for all time served under the sentence of September 26, 1964.

The defendant further contends the state is discriminating against those who successfully attack criminal convictions by subjecting them to the possibility of harsher punishment on retrial, which infringes upon the equal protection clause of the Fourteenth Amendment. We do not agree. It is a fundamental principle of law that once a right or privilege is granted, it must be applied equally and indiscriminately. (*Griffin v. Illinois*, 351 U. S. 12, 100 L. Ed. 891, 76 S. Ct. 585.) But a new trial carries hazards as well as benefits, and a defendant is deemed to waive whatever rights and benefits he derived from the first trial. (*State v. Merritt*, 264 N. C. 716, 142 S. E. 2d 687; *State v. Torreso*, supra.) The granting of the new trial placed the parties in the same position as if no trial had been had, and the defendant must be deemed to have consented to a wiping out of all the consequences of the first trial. Moreover, it has been held that the equal protection due under the Fourteenth Amendment to persons sentenced as habitual criminals is not denied by a state's failure to prosecute others coming within the statutory standards where such failure results from a lack of knowledge of the prior offenses, and that conscientious exercise of some selectivity in enforcement of a state's habitual criminal statute is not in itself a violation of the equal protection clause where the selection is not deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification. (*Oyler v. Boles*, 369 U. S. 448, 7 L. Ed. 2d 436, 82 S. Ct. 501.)

There being absolutely nothing in the record to support any claim that the county attorney abused his discretion, or acted willfully or arbitrarily, in invoking the Habitual Criminal Act when

the defendant was sentenced on April 20, 1966, and the defendant's claim he was denied equal protection of the law, cannot be sustained.

The defendant lastly contends he was denied a speedy public trial in violation of K. S. A. 62-1301. The point is not well taken. A similar contention was made and rejected by this court in *State v. Wilson*, 198 Kan. 532, 426 P. 2d 288, and the reader is referred to that opinion. In the instant case, the crime was committed on the morning of May 25, 1964. The following day the county attorney filed a complaint upon which a warrant was issued, charging the defendant with robbery in the first degree. On June 12, 1964, a preliminary examination was had and the defendant was bound over to the district court for trial on that charge. On June 22, 1964, and during the same term of court in which the preliminary examination was had, the county attorney filed an information in the district court charging the defendant with the crime of which he was convicted. He was first brought to trial on September 15, 1964, and found guilty on September 17, 1964. All proceedings which occurred thereafter were conducted upon the defendant's motion for a new trial and his appeal to this court. It cannot be said he was denied a speedy public trial in violation of Section 10 of the Bill of Rights or K. S. A. 62-1431.

Other points have been raised by the appellant but it would unduly extend this opinion to discuss them. It is sufficient to say they have been carefully examined and found to be without merit.

Finding no error in the record, the judgment of the district court is affirmed.