No. 46,139

STATE OF KANSAS, *Appellee,* v. JOSEPH A. NELSON, *Appellant.*

(486 P. 2d 1330)

Opinion filed July 16, 1971.

*Daniel B. Denk,* of Kansas City, argued the cause and was on the brief for appellant.

*Nick A. Tomasic,* chief deputy county attorney, argued the cause, and *Vern Miller,* attorney general and *Frank D. Menghini,* county attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: This was a criminal action which resulted in the conviction of the appellant of robbery in the first degree (K. S. A 21-527), and a sentence of not less than ten nor more than twenty-one years. (K. S. A. 21-530.)

On October 30, 1969, Brewer's Market, a grocery store in Bonner Springs, Kansas, was robbed of $1600. At 7:45 p.m. on that date, the appellant, his brother, and one Delbert Taylor entered the store. The appellant proceeded to take money at gun point from two clerks at check stands while his brother and Taylor robbed the store manager in the office.

While the robbery was in progress, the assistant chief of police drove into the parking lot of Brewer's Market on a routine check. He was alerted by a hand signal from the doorway of the store by one of the clerks. As the appellant and his companions fled the store in a 1960 white station wagon, they were pursued and stopped by the assistant chief of police. The Nelson brothers were removed from the car, but before Taylor could be removed he sped off in the

station wagon, firing shots, and wounding a policeman. Taylor was subsequently arrested and pled guilty to the crime.

After his arrest, the appellant retained counsel, but later asked the district court to appoint counsel previously retained for the reason he had no more funds to continue to pay an attorney.

The appellant complains of several errors in the trial, the first being the verdict of the jury was contrary to the evidence, and as a matter of law, his guilt was not proved beyond a reasonable doubt. He attempts to support his contention by demonstrating the opposing views of witnesses at the trial.

The state presented four eyewitnesses who positively identified the appellant as one of the participants in the robbery. Opposing that evidence was the appellant's testimony, that of his mother, and an accomplice, to the effect he was not present and did not plan or participate in the crime.

The appellant argues that because of such conflict of testimony, the state failed to sustain its burden of proof of his guilt beyond a reasonable doubt. At least two victims who were employees and in the store at the time of the robbery, identified the appellant as a perpetrator of the crime. One employee was at a check-out stand and the appellant demanded at gun point money from the witness. The appellant wore no mask, and was about eye level with the witness who observed him at least two minutes. Another checker identified the appellant as one who had a gun and demanded money. Both witnesses put the money from their cash registers into a paper sack and handed it to the appellant. Another witness, a former assessor who called at the Nelson home for assessment purposes when the family lived in Bonner Springs, knew the children. She also testified she was supervisor of the Summer Recreation Center at Bonner Springs and that the appellant and his brothers came to the Center and played basketball all summer long. Further, that on the evening of the robbery she went to Brewer's Market for groceries and parked beside a light colored station wagon. She observed men in the car, but did not pay any particular attention to who they were; that as she came out of the store to go to her car, she saw the two Nelson boys, the appellant and his brother, and another boy going into the grocery store. She positively identified the appellant in the courtroom as one of the Nelson boys she saw going into the store.

While the appellant attempts to show he was not a participant

in the robbery, conflicts in evidence are to be resolved by the jury. In *State v. Satterfield*, 202 Kan. 391, 449 P. 2d 564, it was said:

". . . it has been repeatedly stated that in criminal prosecution it is first the function of the jury and then that of the trial court after verdict to determine what facts are established by the evidence. Before a verdict, which has been approved by the trial court, may be set aside on appeal on the ground of insufficiency of evidence it must be made to clearly appear that upon no hypothesis whatever, is there sufficient substantial evidence to support the conclusion reached in the trial court . . ." (l. c. 393, 394).

A reasonable doubt of guilt does not exist merely because of inconsistent and opposing evidence. If the jury believes the evidence presented by eyewitnesses, reasonable doubt does not necessarily exist though there be some evidence to the contrary. In the instant case, the testimony of the appellant and his witnesses that he could not have been present at Brewer's Market at the time of the robbery, was refuted by the positive identification of four eyewitnesses. The conflict in the evidence was resolved by the jury, and there was ample evidence to support the verdict of guilty.

The appellant next complains the district court erred in not allowing an addition after the first sentence, and before the last sentence, of Instruction No. 9 to the effect the jury be instructed that the "[t]estimony offered by the state tending to prove his identification as such person is to be scrutinized by the jury very carefully." The contention is advanced because the appellant's defense revolved around his claim he was not present and did not participate in the robbery. Instruction No. 9 reads:

"The defendant denies that he was the person who took the money from Judy Connell and Robert Thompson or that he had anything to do with the robbery in this case. The burden of proof is upon the State to prove the identity of the defendant as one of the persons who committed the crime charged here with that degree of moral certainty that amounts to proof beyond a reasonable doubt."

In explaining the term "reasonable doubt" in Instruction No. 3, the district court cautioned the jury the term did not mean a mere possible or imaginary doubt, but was such doubt as the jurors are able to give a reason for and which would cause a reasonably prudent and considerate person in the graver and more important affairs of life, to pause and hesitate before acting upon the truth of the matters alleged, and was such a state of mind which, after a careful comparison and consideration of all the evidence, leaves the minds of the jurors in such condition that they cannot say they

feel an abiding conviction of a moral certainty of the guilt of the defendant.

The jury was also informed it must fairly, and without bias or prejudice, consider and discuss the evidence in the case, viewing the same from all angles as presented by both the state and the defendent. In *State v. Trotter*, 203 Kan. 31, 453 P. 2d 93, it was held:

"The adequacy of instructions is determined by their being considered as a whole, each in conjunction with all other instructions in the case." (Syl. ¶ 8.)

Considering the instructions as a whole, there is nothing approaching prejudicial error, and the district court did not err in refusing to include the requested sentence to Instruction No. 9.

The appellant next complains prejudice on the basis of a remark made by the county attorney in the presence of the jury. During the examination of the arresting officer by the state, reference was made to one of the accomplices. The error complained of is best shown by the record:

"Q. (By Mr. Koehler) You have referred to Daniel Nelson, would you turn around and look at this rogues gallery—

"MR. CHAMBERS: If the Court please, I think that is without the context of this trial.

"THE COURT: The objection is sustained. Let's be careful about our language here, Mr. Koehler. If you have a question to direct to this witness, do so, but refrain from any such descriptive adjective as you just used.

"Q. (By Mr. Koehler) Would you look at the gallery and tell me if you recognize William Daniel Nelson?"

The appellant contends his "entire family was slandered and implicated in the mind of the jury, thereby destroying any admirable qualities of the accused and his family."

Whether the remark of the county attorney was sufficient to require the granting of a mistrial depends on whether the statement actually prejudiced the jury. The form of the question was objected to and the district court sustained the objection. The county attorney refrained from asking further objectionable questions. We cannot say the question and the statement as a whole constitute prejudicial error. This was an armed robbery trial where the appellant's entire family—over 30 people, infants and adults—appeared at the trial every day. They consistently disrupted the trial, either by crying, laughing, arguing, talking, or moving in and out of the courtroom. Upon reception and reading of the verdict, the entire family caused disturbances and committed indignities in the courtroom to such extent the district court was required to order

them to leave the courtroom if they could not control themselves, and directed the sheriff to escort them into the corridor.

The district court instructed the jury, in Instruction No. 15, that "[r]emarks of counsel made during the trial are not evidence and should not be considered by you as such in arriving at your verdict in this case." Since the county attorney was asked to rephrase the question, and since he asked no further objectionable questions on the point, we are of the opinion Instruction No. 15 provided a safeguard against possible prejudice, and the court did not err in overruling the appellant's motion for a mistrial. See *State v. Wright*, 203 Kan. 54, 56, 453 P. 2d 1, and *State v. Miller*, 204 Kan. 46, 48, 460 P. 2d 564.

The appellant lastly complains the district court erred in appointing counsel to represent him and his co-defendant, in that possible conflicts of interest may have denied him full and fair representation. The point is not well taken. Both the appellant and his brother were represented at the preliminary hearing on December 4, 1969, by the same attorney they had retained. On March 31, 1970, they advised the district court they were without funds to employ counsel, and requested that the attorney they originally retained be appointed to represent them. They also requested separate trials. Before appointing counsel, the district court inquired:

"THE COURT: Let me ask you this, Mr. Chambers—I got in a jam one time appointing the same lawyer to represent two defendants. Is there any possible conflict of interest between these two boys?

"MR. CHAMBERS: If the Court please, I do not believe that there is any conflict between these two defendants. I might advise the Court that these will be separate trials in this matter, but insofar as what the evidence will be and the testimony that I know thus far, I can see no conflict whatsoever.

"MR. TOMASIC: Can we extend that to the other Nelson brother? . . .

"THE COURT: It is not a case where they are trying to put off the guilt on one or the other of the defendants?

"MR. CHAMBERS: No, sir.

"THE COURT: You and I both know this happens between co-defendants.

"MR. CHAMBERS: That's right.

"THE COURT: Do you boys see any reason why you shouldn't have the same lawyer?

"DEFENDANT JOSEPH NELSON: No.

"DEFENDANT JAMES F. NELSON: No.

"THE COURT: Does the State care to be heard in this respect?

"MR. TOMASIC: Your Honor, we have no objection to Mr. Chambers being appointed at this time.

"THE COURT: All right. In both cases I find that the defendant is indigent, unable to employ counsel of his own choosing. They apparently both are

willing that Mr. Chambers represent them, and have confidence in him. He is willing to accept appointment, so at this time the Court does appoint Mr. Chambers as attorney for both of these men."

The appellant cites and relies upon *Glasser v. United States,* 315 U. S. 60, 86 L. Ed. 680, 62 S. Ct. 457, and *State v. Young,* 196 Kan. 63, 410 P. 2d 256. Both cases involved the appointment of counsel to represent co-defendants in the same trial where possible conflicts of interest in defenses could have resulted.

In the instant case there is absolutely nothing in the record showing that any conflicts of interest resulted from the appointment of a single counsel. Moreover, the appellant made no objection to the appointment of counsel, but in fact requested that originally retained counsel be appointed to represent him. His contention has no possible merit.

K. S. A. 62-1718 provides that on appellate review of criminal prosecutions this court must render judgment without regard to technical errors or irregularities which do not affect the substantial rights of the parties. (*State v. Clift,* 202 Kan. 512, 449 P. 2d 1006.) We have thoroughly reviewed the record and all contentions advanced by the defendant have been carefully studied. It is sufficient to say the record does not affirmatively disclose that the substantial rights of the defendant were prejudicially affected by any of the rulings of the district court, and, further, that the defendant had a fair and impartial trial of the charges alleged against him. The judgment of the district court is affirmed.