No. 47,997

STATE OF KANSAS, *Appellee,* v. CHRISTY TIMMONS, *Appellant.*

(545 P. 2d 358)

Opinion filed January 24, 1976.

*Harold T. McCubbin,* of Norton, argued the cause and was on the brief for the appellant.

*James R. Fetters,* County Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The defendant (Christy Timmons) appeals from a conviction by a jury of theft in violation of K. S. A. 21-3701 (*d*). The specific charge was obtaining control over stolen property knowing it to have been stolen by another. Three points of error are specified.

The charge against defendant stems from a burglary and theft of drugs from a drugstore in Smith Center. In the course of the drugstore theft investigation, Agents Earl M. Maudlin and Guy S. Teeselink, of the Kansas Bureau of Investigation, procured a search warrant for the residence of Kent Chamberlain in Gaylord. The validity of the search warrant is not challenged.

On September 20, 1973, Agents Maudlin and Teeselink, accompanied by Undersheriff Larry Langman proceeded to Gaylord to execute the search warrant. After arriving at Gaylord the officers parked their automobile in the vicinity of the Chamberlain residence. While the officers were still in their automobile they saw a Rambler automobile approach and then enter the driveway of the Chamberlain residence. Langman was familiar with the automobile and recognized the occupants as the defendant and one Robert Cole, the owner of the automobile. Defendant was in the driver's seat. The officers then approached the Chamberlain residence. By the time the officers arrived Cole was out of the Rambler and near the front porch of the Chamberlain residence. Agent Maudlin approached Cole and asked for identification. Cole produced his driver's license. Maudlin testified that when he encountered Cole he appeared to be "in a state of being high or something." About this time defendant was starting to exit from the driver's seat of the Rambler. Maudlin approached the Rambler as defendant was opening the door. Maudlin testified that in his opinion there was an odor of marijuana coming from the vehicle.

The search warrant was displayed to the defendant and the officers proceeded to search the Rambler. Maudlin testified that prior to the search he had observed a white bag sticking out from under the right front seat of the Rambler. The bag contained a number of pills, which were later identified as being the same as the property stolen from the drugstore. A package of pills and marijuana was

also found in the glove compartment. After finding the pills and marijuana, Cole and defendant were placed under arrest.

Agent Maudlin further testified that after defendant was advised of his constitutional rights he admitted that he was present when the pills were taken from their original containers; that he helped count the pills and place them in little plastic bags; and that the original containers were burned in a trash can belonging to Charles Cole.

James R. Martin was appointed as counsel for defendant and a preliminary hearing was conducted on October 30, 1973. At the conclusion of the preliminary hearing defendant was bound over for trial to the district court on the charge herein.

On March 7, 1974, a regular motion day of the district court, Mr. Martin made an oral motion to withdraw as court-appointed counsel for defendant. Defendant was absent from the court, but his mother was present. The court asked that defendant be produced in court while Mr. Martin's motion for withdrawal was being considered. Later in the day defendant appeared before the court. Upon questioning by the court it appeared that defendant was employed and earning $60 a week. The following colloquy between the court, counsel, and defendant then ensued:

"THE COURT: Well, of course, I don't think anybody making $60.00— You are single?

"MR. TIMMONS: Yes.

"THE COURT: That hardly would be classified as indigent at $60.00 a week. And I think you are able to employ counsel to represent you. So the Court is going to permit you to withdraw, Mr. Martin. I am going to direct you, Mr. Timmons, to get an attorney, get one right away because the case is going to be tried on—What is the date?

"MR. FETTERS: April 16th.

"THE COURT: On April 16th, so you had better get somebody to represent you because you can pay it out of $60 a week. You can hire someone to defend you. Now, do you understand that the case is going to be tried on the 16th regardless of whether you have got an attorney in here or not. Do you understand that?

"MR. TIMMONS: Yes.

"MR. MARTIN: If the Court please, I also informed Mr. Timmons I would be glad to furnish him any part of my file.

"THE COURT: However, you have to employ someone and you get busy and get you an attorney. If you don't you are going to be in pretty serious trouble when you come up for trial without an attorney. You understand that, do you?

"MR. TIMMONS: Yes.

"THE COURT: And tell whoever you hire to represent you that he can get in touch with Mr. Martin to get what file he has on the thing.

"Mr. Martin: That is correct, and I will be cooperative one hundred percent, Your Honor.

"The Court: All right. You understand that now thoroughly?

"Mr. Timmons: Yes.

"The Court: Okay."

Mr. Martin was permitted to withdraw as counsel at the conclusion of the colloquy.

On April 16, 1974, the date set for trial, defendant filed an affidavit to the effect that he was without funds to hire counsel to defend himself. In his affidavit defendant also alleged that the district judge was prejudiced against him and requested that a different judge be appointed to try the case.

The case was called and the county attorney and defendant appeared in person. The following colloquy took place:

"The Court: State of Kansas, plaintiff, vs. Christy Timmons, defendant, Case No. 9968. Do you have the yellow piece of paper you had yesterday that you want to offer in evidence?

"Mr. Timmons: Yes, I got it but I don't care to say anything without a lawyer.

"The Court: Do you have a lawyer yet?

"Mr. Timmons: No.

"The Court: All right.

"Mr. Fetters: Have you contacted any attorneys around here?

"Mr. Timmons: Well, at this time I don't care to say anything without a lawyer.

"Mr. Fetters: Have you got any money on you right now?

"Mr. Timmons: I just don't care to say anything without a lawyer.

"Mr. Fetters: How many attorneys have you contacted since March 7th when you were first advised you wasn't going to have court-appointed counsel?

"Mr. Timmons: I don't care to say anything without a lawyer.

"Mr. Fetters: Have you contacted any attorney in Kansas since March 7th about representing you in this case?

"Mr. Timmons: I don't care to say anything without a lawyer.

"The Court: Let the record show that the Court has previously made a finding that this man was not indigent. He was working and making $60.00 a week and apparently quit his job. The Court still finds there is no grounds for finding that he is indigent. As far as the affidavit for disqualification or is prejudiced, it is absolutely insufficient under the law.

"Mr. Fetters: Your Honor, could I inquire if the defendant has any dependents that he is the sole support of.

"The Court: He won't say anything. You can inquire.

"Mr. Fetters: Do you have any dependents?

"Mr. Timmons: At this time I just don't care to say anything without a lawyer.

"Mr. Fetters: That is all I have.

"The Court: Do you care to say anything in what respect you think I

am prejudice against you without a lawyer. You explain why you think I am prejudice against you.

"Mr. Timmons: I just can't say anything without a lawyer for right now.

"The Court: All right. The Court finds that the affidavit of prejudice should be overruled. It is insufficient under the law and defendant refuses to explain anything further in connection therewith. The Court in his own mind has no idea that I am prejudice against him in any way. The only thing I refused to do is find that he was indigent. So we will proceed to trial on the status that it is now. The clerk informs me that all the jurors have reported for service. Let me comment on your promptness. I think we can just as well go ahead in this matter. Would you call the jurors."

In his first point on appeal defendant contends he was denied right to counsel in violation of the Sixth Amendment to the Constitution of the United States.

Defendant's main argument on this point is that absent a waiver his entitlement to the appointment of counsel is absolute and irrespective of financial ability. In the alternative, defendant contends that we should take judicial notice of the fact that defendant's income of $60 per week is insufficient to employ counsel.

Defendant relies primarily upon *Argersinger v. Hamlin*, 407 U. S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006, and certain language of this court in *State v. Weigand*, 204 Kan. 666, 466 P. 2d 331. Neither case supports the position taken by defendant. The sole issue in *Argersinger* was whether an indigent misdemeanant facing a prosecution, the punishment for which included six months imprisonment, was constitutionally entitled to counsel. The holding was pronounced in these words:

"We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." (p. 37.)

*Argersinger* dealt only with the classification of offenses with respect to the constitutional right to counsel, it cannot be interpreted to be an absolute mandate requiring the appointment of counsel, regardless of financial ability as defendant would have us do.

Concerning *Weigand* defendant contends the decision stands for the proposition that when a defendant appears for trial without counsel, the court before proceeding to trial must appoint counsel, irrespective of the indigency of defendant. In support of this argument defendant cites this excerpt from the *Weigand* opinion:

"A trial court should be aware of the propensities of the accused to procrastinate in the hiring of counsel. The court can and should protect itself against the irresponsibility of the defendant. After a reasonable time has

been granted to the accused to procure counsel of his own choosing, as was done in this case, the accused should be ordered to appear on a day certain with counsel. If the accused has not obtained counsel on that day counsel should then be appointed to represent him and the trial date should be set with sufficient time to permit counsel to advise with the accused, prepare a defense, subpoena witnesses and acquaint himself with the facts and the law. What time is reasonable will depend upon the circumstances of each case and should be determined by the trial court in its discretion." (p. 671.)

The quoted language demonstrates the zeal with which this court has not only guarded a defendant's right to counsel, but also the right to effective representation. (See, also, *State v. Young*, 196 Kan. 63, 410 P. 2d 256, and cases cited therein.) However, the *Weigand* decision cannot be given the import desired by defendant. The issue before the court concerned the effectiveness of representation, rather than the defendant's entitlement to counsel. The decision was confined to the narrow issue before the court and its scope was expressed in these words:

". . . What we here decide is that to force a defendant to trial ten or fifteen minutes after appointed counsel is precipitated into a serious felony case denies the accused effective assistance of counsel and violates fundamental principles of due process of law." (p. 672.)

In the instant case, the question of defendant's ability to retain counsel first came before the trial court in connection with Mr. Martin's motion to withdraw as court-appointed counsel, which was heard by the court on March 7, 1974. At that time, the court, being informed that defendant was single and employed at $60 per week, determined that defendant was able to employ counsel. Defendant was fully informed that he must get busy and employ counsel, as his case was set for trial on April 16, 1974. The defendant acknowledged that he understood the court's order. Neither defendant nor Mr. Martin, who was still defendant's counsel, objected to the court's determination at that time.

The next event, disclosed by the record, took place on April 16, 1974, the trial date, when defendant filed his affidavit and appeared before the court, as heretofore described. The record of the colloquy between the court, the defendant, and the county attorney indicates that, notwithstanding the court's prior determination made on March 7, an effort was made to reassess the defendant's ability to retain counsel. Defendant, however, apparently on the advice of someone, refused to answer any questions put to him by the court or the county attorney. As a consequence, the trial court let stand its previous ruling concerning defendant's ability to employ

counsel and proceeded with defendant's trial. Thus, the question presented is whether the trial court's refusal to set aside its previous order of March 7 constituted a violation of defendant's right to counsel. We hold that, under the extraordinary circumstances revealed by this record, the action of the trial court was justified.

The legislature has enacted comprehensive provisions for the aid to indigent defendants (K. S. A. 22-4501, *et seq.*). We believe the act meets constitutional requirements and essentially accords with American Bar Association Standards. (ABA Standards, Providing Defense Services, §§ 6.1 to 6.3, incl.) K. S. A. 22-4503 mandates that every defendant charged by the state with a felony is entitled to counsel at every stage of the proceedings against him. It is made the duty of any court or magistrate to inform a defendant, who appears without counsel that counsel will be appointed to represent him, if he is not financially able to employ an attorney. K. S. A. 22-4504 sets out a number of financial and other criteria for the judge to consider in determining whether a defendant is financially unable to employ counsel. It provides that a judge may, in his discretion, require the defendant to file an affidavit stating various enumerated items and that the judge or magistrate may interrogate the defendant under oath concerning the contents of the affidavit. Upon the basis of the defendant's affidavit, if required by the court, defendant's statements under oath and such other competent evidence as may be adduced, the judge or magistrate shall determine whether the defendant is financially able to employ counsel. The statute further provides that evidence bearing upon the question shall be made a part of the record and the determination shall be subject to subsequent review at any time by any judge or magistrate before whom the case is pending. It is clear the statute does not mandate the automatic appointment of counsel, but rather contemplates that a determination of entitlement be made upon the evidence before the court.

In the instant case, defendant was found financially able to employ counsel on March 7, 1974. He did not object to such determination then, or at any subsequent time, until six weeks thereafter when he filed his affidavit on the day of trial with the jury present. Even under these circumstances, we believe the filing of an affidavit by defendant made it incumbent on the trial court, under the overriding compulsion of providing defendant a fair trial with counsel, to review its prior determination of financial ability. This the trial court undertook to do, as the

record discloses, but was met by the defendant's answer "I don't care to say anything without a lawyer" to all questions put to him by the court or county attorney. The defendant's own conduct prevented a reconsideration of his ability to employ counsel. We believe our statute (22-4504) contemplates liberality in determining ability to employ counsel. The statute does not speak in terms of indigency, but employs the language "financially unable to employ counsel." In other words, the status of being destitute is not a prerequisite. However, in a case such as this, where a defendant is shown to have some income and no dependents, at least some showing of inability to employ counsel should be made in order to warrant the setting aside of a prior determination.

Under the provisions of 22-4504 the ability of a defendant to employ counsel is to be determined in the discretion of the trial court, subject, of course, to review by this court for abuse thereof. In making the determination it is the duty of the trial court to consider the criteria enumerated in the statute and to consider each case in the light of the constitutional mandate of providing a fair trial with effective assistance of counsel. This does not mean, however, that a defendant by his own conduct can be permitted to frustrate the court in making its determination. The only evidence submitted by defendant was the naked statement in his affidavit that he was without funds. The trial court, on the other hand, had previously determined that defendant was able to employ counsel. In the absence of any claim by defendant that he had attempted—without success—to employ counsel we cannot say the trial court erred in refusing to set aside its previous ruling. While defendant's financial ability appears to have been limited, the ability to employ counsel is a question for the trial court or magistrate in the first instance and the determination thereof, if supported by any evidence, will not be set aside if the directions of the statutes have been followed.

Under the particular circumstances shown by the instant record, we find no error in the trial court's refusal to set aside its previous order and appoint counsel for defendant. As the state points out, a holding to the contrary on this record would necessitate the automatic appointment of counsel in every case where a defendant did not desire to use his own funds. In the context in which this case is presented, to adopt the defendant's position would require the appointment of counsel even for the determination of entitlement.

No such requirement appears in our statutes, nor are we aware of any constitutional mandate to that effect.

Defendant next contends the trial court erred in failing to recuse himself in response to defendant's affidavit. Concerning the disqualification of judges, K. S. A. 20-311f (a) provides in pertinent part:

". . . [A] party shall have seven (7) days after pretrial, or after receipt of written notice of the judge to which the case is assigned or before whom the case is to be heard, whichever is later, in which the affidavit may be filed."

In the case at bar, defendant knew the identity of the trial judge at least six weeks prior to the date of trial. There is nothing in the record to indicate that defendant acquired knowledge of new facts which might be indicative of prejudice between the motion day on March 7, 1974, and the date of trial (April 16, 1974.). Since defendant's motion was not filed within the time limits specified by the statute we find no error in this regard.

Finally, defendant contends the trial court erred in failing to suppress evidence which defendant says was obtained as the fruit of an illegal search and seizure. Defendant's argument appears to be that a premises search warrant for the Chamberlain residence did not authorize a search of the Cole automobile parked in the driveway. The search warrant is not reproduced in the record.

In response to defendant's argument the state maintains that seizure of the pills was lawful under the "plain view doctrine" since Agent Maudlin testified the pills were in a plastic bag, which he saw sticking out from under the front seat when defendant opened the door on the driver's side of the Rambler. The state also maintains there was probable cause for the search of the automobile as Maudlin had observed that Cole was "high or something" and detected the odor of marijuana coming from the automobile when defendant opened the door.

The question is presented in a factual context similar to that shown to exist in the recent case of *State v. McClelland,* 215 Kan. 81, 523 P. 2d 357. In *McClelland* officers were executing a premises search warrant when they observed defendant McClelland standing near an automobile parked on the curtilage in front of the house located on the premises described in the warrant. It was held that McClelland was on the premises and within the scope of the search warrant.

In the case at bar, Undersheriff Langman knew the defendant

and Mr. Cole and he recognized the Rambler as being Cole's automobile. Langman had informed Agents Maudlin and Teeselink that Cole and defendant were friends and acquaintances of Chamberlain. The automobile, being parked in the driveway, was on the premises. The officers had knowledge that connected the occupants of the automobile with the occupant of the premises. One of the occupants appeared to be "high" and the odor of marijuana was detected as coming from the automobile. The officers were in the process of searching the premises under a valid search warrant for stolen drugs. The automobile could have been moved and the contraband disposed of while a specific warrant was being sought.

Section Fifteen of the Bill of Rights of the. Constitution of the State of Kansas and the Fourth Amendment to the Constitution of the United States prohibits only unreasonable searches and seizures. (*State v. McClelland,* supra; *State v. Brunner,* 211 Kan. 596, 507 P. 2d 233; and *State v. Thomas,* 205 Kan. 442, 469 P. 2d 279.) The reasonableness of a search is to be determined from the facts and circumstances of each case. (*State v. Jackson,* 213 Kan. 219, 515 P. 2d 1108.)

Under the particular circumstances shown to exist we hold the search was reasonable.

The judgment is affirmed.

PRAGER, J., dissenting: I respectfully dissent from that portion of the opinion holding that the district court did not commit error in refusing to appoint counsel for the defendant. I cannot in good conscience join in the conclusion of the majority that under the evidentiary record presented in this case the defendant was afforded his right to counsel as required by the Sixth Amendment to the United States Constitution.

It is undisputed that during the month of October 1973, James R. Martin was appointed as counsel for defendant and represented him at the preliminary hearing. Of necessity, the court must have made a finding of indigency at that time. On March 7, 1974, the district court permitted Mr. Martin to withdraw as court appointed counsel for the defendant. At that time the court interrogated the defendant, Timmons, and found that he was employed making $60 per week. On the basis of that income the court found that defendant was financially able to employ counsel and directed him to do so. On April 16, 1974, the defendant filed an affidavit in

which he stated under oath that he was without funds to hire counsel to defend himself in the district court. The defendant refused to answer any questions propounded to him by either the court or the county attorney as to his financial condition stating that he did not care to say anything without a lawyer. The court then stated that it had previously made its finding that the man was not indigent because he was working and making $60 per week and *apparently quit his job.* I interpret this as a finding by the court that the defendant was no longer employed. On the basis of this undisputed record it seems to me that the trial court had the duty to appoint counsel for the defendant in spite of the fact that the defendant obstinately refused to answer any questions. It is easy to understand how the trial judge might have become exasperated by the conduct of this defendant. The trouble is that quite frequently defendants brought before the court under criminal charges are not reliable, responsible persons who do what they ought to do. Apparently in this case this 21-year-old youth received some bad advice from somebody and refused to talk unless a lawyer was present. There is no contention that he ever waived his right to be represented by counsel. In my judgment it was an abuse of the discretion of the trial court not to provide appointed counsel for this young man.