No. 46,574

STATE OF KANSAS, *Appellee*, v. SYLVESTER DALE HAZELWOOD, *Appellant*.

(498 P. 2d 607)

Opinion filed June 10, 1972.

*John Q. Royce,* of Salina, argued the cause and was on the brief for the appellant.

*Bill Crews,* County Attorney, argued the cause, and *Vern Miller,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the defendant in a criminal action from a conviction of third degree burglary as defined by K. S. A. 21-520 and larceny as defined by K. S. A. 21-524. Sentences of not less than fifteen years on each count were imposed to run concurrently.

Various points, including trial errors, are asserted on appeal for reversal of the judgment of the trial court.

The Sid Oil Company, located at 159 South Fourth Street in Salina, Kansas, was burglarized sometime between Saturday evening, May 9, 1970, and Sunday evening, May 10, 1970. Entry to the building was gained by removing the plate glass window from a side door and then reaching inside to open the door. To remove the plate glass in one piece, as was done, it was necessary to pry off the molding surrounding the plate glass.

Sid Danderand, owner of the Sid Oil Company, testified approximately $15 to $17 had been taken from the cigarette and pop machines at his place of business, although he conceded the amount could range from $12 to $25.

Mr. Danderand also noticed a long black-handled screwdriver missing. The screwdriver was distinctive in that it had dots of blue paint on the handle.

In the course of investigation the Salina police gathered several pieces of the wood molding which bore marks or gouges on the underside and made Koflex impressions of other marks on the cigarette machine. The pieces of wood and the Koflex impressions were later sent to the Kansas Bureau of Investigation laboratory for examination.

At approximately 4:10 a. m., Monday, May 11, 1970, two Junction City, Kansas, police officers while cruising in their patrol car noticed the appellant when he "ducked into an alley." They had just finished working two burglaries and were "looking for possible suspects in the area," and therefore accelerated the speed and pulled their patrol car into the alley.

By the time the officers reached the alley the appellant had "gotten down behind some vehicles." After spotting him behind

the vehicles, both officers got out of the patrol car, one circling around behind the appellant and the other approaching from the front.

The appellant was ordered to come out from behind the vehicles with his hands up, and directed to come to the patrol car and place his hands on top of the patrol car, to back up, and to spread his legs. He promptly complied.

At the time the appellant raised his hands in response to the officer's command, the front of his jacket spread open and the officer observed a blue bag suspended beneath his arm.

A search of the appellant by the officers then proceeded. As one officer approached the appellant from the rear and placed his left hand on the appellant's back, he felt an object under the appellant's jacket in the back of his waist. Upon raising the jacket, the officer saw a large screwdriver along with three other screwdrivers, a knife variously described as a "small paring knife" or a "steak knife," and a flashlight, stuck in the back of the appellant's waist. With his left hand still on the appellant's back, the officer removed these items from appellant's possession, and as he "pulled them off of the subject" he "laid them directly to the rear of where [the officer] was standing in the alleyway." The officer then removed appellant's jacket and the bag (which was found to be a blue money bag) from around the appellant's arm. These also were placed on the ground next to the other items.

Up to this point in the confrontation between the Junction City police officers and the appellant there had been no conversation of any kind between them, except for the commands given by the officer. The appellant had not been told that he was being arrested for anything, nor even that he was being detained on suspicion of any offense.

Before any inquiry was directed to the appellant, the officer in charge recited the standard Miranda warning to him, and having done so, he testified:

"I asked the subject where he was working or if he was living in Junction City. He advised that he was not working and he did not live in Junction City."

The officer then informed the appellant he was under arrest for vagrancy.

Thereafter, the appellant was handcuffed and placed in the rear seat of the patrol car. The officers picked up the four screwdrivers,

the paring knife, the flashlight, appellant's jacket and money bag and placed them in the patrol car. They then drove to the police station and booked the appellant.

The items which had been taken from the appellant were recorded on appellant's personal property sheet at the police station and placed in the personal property locker.

At approximately 10:00 a. m. on May 11, 1970, Detective Huff and Detective Landers of the Salina police department arrived at the police station in Junction City. Before seeing the appellant a detective of the Junction City police department delivered to Detective Huff a long black-handled screwdriver, a short black-handled screwdriver, two screwdrivers with yellow handles, a flashlight, a paring knife, and a money bag containing $15.51, of which $6.75 was in quarters; $1.10 in nickels; $6.10 in dimes; and $1.56 in pennies.

Having examined the screwdrivers and the money bag, together with its contents, Huff and Landers then interrogated the appellant. Before asking him any questions, Detective Huff again recited to the appellant the Miranda warning. The appellant was also told he was suspected of a burglary in Salina, and asked if he wanted to talk about it. Detective Landers testified "he said, yes, he would talk about it but he didn't know anything about it; that he had committed no burglary in Salina." He did admit; however, that he had been in Salina; that he had arrived in Salina on May 8 and had stayed there May 8 and 9 and left on May 10 at about 12:30 p. m. on a bus bound for Junction City. He was asked about the long black-handled screwdriver, and he said he had found it in Salina in front of the A & G Cafe.

Detective Huff retained the appellant's personal property, which had been delivered to him by the Junction City police, and transported it with him to Salina. Upon his return to Salina, Detective Huff marked all of those items as evidence, and mailed them to the K. B. I. laboratory.

Following the return of Detectives Huff and Landers to Salina, the Saline County attorney executed an affidavit of complaint against Sylvester Dale Hazelwood for breaking and entering the building of the Sid Oil Company, and taking and carrying away approximately $15 in United States coins with intent to convert them to his own use. The complaint was filed in the magistrate court of Saline County, Kansas, and a warrant was issued for the appellant's arrest.

The warrant was executed by arresting Hazelwood at Junction City on May 13, 1970. On that same day he was brought before the magistrate court of Saline County, bond was fixed, the time for preliminary hearing was set, and upon a showing of indigency, counsel was appointed.

On June 3, 1970, a preliminary hearing was had in the magistrate court, and the appellant was bound over to the district court of Saline County for trial.

At the time of trial the appellant filed a motion to suppress the evidence obtained as a result of the search and seizure by the Junction City police officers, and to suppress any admissions made by the appellant to the Salina detectives during their interrogation of him in Junction City. The trial court heard extensive evidence on the motion out of the hearing of the jury and overruled the motion.

Over objection the trial court received in evidence on behalf of the state the following exhibits:

Exhibit 1—A long black-handled screwdriver, with blue dots on the handle;

Exhibit 2—A two-foot piece of blue molding from the scene of the burglary;

Exhibit 7—A small yellow-handled screwdriver;

Exhibit 9—A photograph of the small yellow-handled screwdriver about to be placed in an indentation in the blue molding (Exhibit 2); and

Exhibit 10—A photograph of the small yellow-handled screwdriver completely placed in an indentation in the blue molding (Exhibit 2).

Mr. Danderand testified Exhibit 1 was the screwdriver taken from his place of business.

Detective Huff testified the appellant admitted he had been in Salina on May 8, 9, and until shortly after noon on May 10.

William Tucker, an employee of the Kansas Bureau of Investigation assigned to the K. B. I. laboratory, testified he had examined Exhibit 2 and Exhibit 7 and had conducted an investigation to determine the relationship between them. Over objection of the appellant Mr. Tucker was permitted to testify Exhibit 7 was unique in that the side corner portion of the blade at the end of the screwdriver was broken or missing; that it was his "expert opinion" that the indentations on the molding (Exhibit 2) were made by

the screwdriver (Exhibit 7) to the exclusion of all other screw-drivers.

After the state rested its case in chief the appellant presented no evidence, but moved the court for a directed verdict for failure of the state to present any competent evidence to establish a *prima facie* case on either offense charged. The motion was overruled, but the court did find that no evidence had been introduced from which the jury could conclude the burglary was committed in the nighttime. It therefore withdrew from the jury's consideration the charge of burglary in the second degree. The jury was instructed, however, it could find the appellant guilty of burglary in the third degree.

The appellant first contends the trial court erred in permitting the introduction into evidence of the articles seized by the police in Junction City.

Here the appellant asserts when he was booked at the Junction City police station for vagrancy, neither of the officers had any knowledge or information that a burglary had occurred in Salina, Kansas. He takes the position that the evidence seized was the result of a warrantless search, and his right to privacy guaranteed by the Fourth Amendment to the Federal Constitution, and made applicable to the states through the due process clause of the Fourteenth Amendment (*Mapp v. Ohio*, 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A. L. R. 2d 933), was violated and requires the exclusion of the evidence seized. (*Mapp v. Ohio*, supra; and *Terry v. Ohio*, 392 U. S. 1, 12-13, 20 L. Ed. 2d 889, 88 S. Ct. 1868.)

Both this court and the United States Supreme Court have recognized that the Fourth Amendment does not in express terms require a warrant in every case. What the Constitution forbids is not all searches and seizures, but only unreasonable searches and seizures. (*Terry v. Ohio*, supra; *State v. Blood*, 190 Kan. 812, 378 P. 2d 548; *State v. McMillin*, 206 Kan. 3, 476 P. 2d 612; and *State v. Boyle*, 207 Kan. 833, 486 P. 2d 849.) The question posed, therefore, is whether, under the facts and circumstances confronting the court in this case, the police officers in Junction City acted in a reasonable manner when they stopped and frisked the appellant.

The record establishes that two police officers in Junction City, who had just finished working a couple of burglaries, were out "looking for suspects" and at 4:10 a. m. saw a man "duck" into an

alley and get "down behind some vehicles." After commanding the man to come out from behind the vehicles, one officer proceeded to pat the man down "for my protection and the protection of the other officer with me, to see whether the subject had any type of weapon on him." As the officer began the pat down, he felt objects underneath the man's jacket at the level of his belt. The objects, in this case four screwdrivers, a knife and a flashlight, were then seized by the officer.

Under these circumstances the search and seizure was reasonable, considering the early morning hour, the subject's furtive behavior and the officers' own knowledge concerning the recent commission of two burglaries in the area. Accordingly, the trial court did not err in overruling the appellant's motion to suppress the evidence.

The appellant's *subsequent* arrest for vagrancy (which might well have been for possession of burglary tools) whether valid or not is immaterial to the reasonableness of the search and seizure. (See *Papachristou v. City of Jacksonville*, 405 U. S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839; and *State v. Wade*, 206 Kan. 347, 479 P. 2d 811.)

Appellant contends the Junction City police had no authority to hand over the items to the Salina police. The items in question were in the lawful custody of the Junction City police, having been properly seized, and properly delivered to officers of the Salina police department. No question is raised by the appellant concerning the chain of possession of the various exhibits admitted in evidence.

The appellant contends the trial court erred in permitting William Tucker to testify as an expert witness.

Mr. Tucker was a laboratory technician for the Kansas Bureau of Investigation who testified concerning his examination of the state's Exhibit 7 (a yellow-handled screwdriver) and its relationship to an imprint in state's Exhibit 2 (window molding). The appellant further objects to the introduction of a photograph (Exhibit 9) showing the screwdriver being placed into the molding and also state's Exhibit 10 (also a photograph) showing the screwdriver as it was completely placed into the indentation on the molding. Mr. Tucker testified that in his opinion the screwdriver made the marks on the molding to the exclusion of all other screwdrivers.

The appellant contends this testimony and related evidence should have been excluded on the ground the matters were within the realm of ordinary comprehension; and that to admit the testimony and evidence was to invade the province of the jury. The trial court, after hearing the arguments, permitted Tucker to testify as an expert witness. Mr. Tucker said during the past eighteen months he had examined anywhere between 100 to 150, perhaps even 200, tool indentations. He further made an eye examination and a microscopic examination of the exhibit.

In *State v. Lamb*, 209 Kan. 453, 497 P. 2d 275, Syl. ¶ 14, the court said: "The competency of an expert witness to give an opinion concerning matters of expertise lies largely within the trial court's discretion, and its ruling will not be set aside on appeal in the absence of a clear showing of abuse." Here the appellant has failed to establish that the trial court abused the exercise of its power of discretion.

After the trial, but before judgment and sentencing, the appellant *pro se* filed two motions. Each motion, one labeled a motion for new trial, charged his court-appointed counsel with "misrepresentation." The appellant asserts error on the part of the trial court in refusing to appoint additional counsel to assist him in presenting evidence on the matter. He also urges error because the trial court refused to permit his court-appointed counsel to withdraw because of "a conflict of interest."

The crux of the appellant's argument concerns the refusal of his appointed counsel to call certain unnamed individuals as witnesses. The appellant requested these witnesses contending that "they would help my own defense."

The reason for not calling the requested witnesses is stated by his court-appointed counsel in these words:

". . . Two particular witnesses, neither of whom are identified by name, but whose existence is referred to in our initial interview, I determined that by virtue of the defendant's own story that neither of them would constitute an alibi for a sufficient period of time to permit us to effectively argue that this defendant did not in fact have the opportunity to commit the offense with which he is charged; that instead their testimony would indeed place him in Salina, would beyond any doubt provide evidence that he was in downtown Salina within four blocks of the place of the alleged offense during the night-time. I believe the record—you will recall that the record will indicate that the State's evidence did not indicate that this offense necessarily was committed at night. The lack of the testimony of these two witnesses enabled us

to obtain a reduction of the offense from burglary two to burglary three.
. . ."

The trial court specifically found, after hearing argument, that the appellant's appointed counsel was competent. At one point the trial court stated:

". . . I can't help but point out that this is a good example of competent representation of an indigent defendant by a lawyer. . . .

"The defendant's brief in support of the motion for new trial is an excellent brief. I will go farther than that. It is the best brief that the Court has seen in a long, long time on a criminal matter."

At a later time the court stated to the appellant's court-apointed counsel:

"I think you are totally and completely competent to advise Mr. Hazelwood as to the matter of self-incrimination and what his rights are. This doesn't involve any conflict of interest whatsoever. On the other hand, I don't understand that this Court is requiring you to produce testimony and evidence that you are incompetent. . . ."

Finally, at the conclusion of the appellant's remarks concerning inadequacy of his court-appointed counsel, the court found:

". . . that counsel was perfectly competent; and the Court finds that your motions for new trial on the grounds of any inadequate or incompetent counsel should be and is overruled. . . ."

In light of the trial court's specific findings that no conflict of interest existed, and that the appellant was properly represented by counsel, we conclude, after reviewing the entire record, there is no merit in the appellant's assertions.

It is to be noted the appellant later made a specific request for his court-appointed counsel (the same counsel previously challenged) to represent him on this appeal. By this request the appellant, in effect, waived his prior objection.

The appellant next contends he was improperly sentenced under the habitual criminal act (K. S. A. 21-107a).

Court-appointed counsel for the appellant argued the record of the appellant's two prior felony convictions was insufficiently documented.

The trial court sentenced the appellant approximately two months after notice of intention to invoke the habitual criminal act was served upon him. The court specifically found the appellant had two prior felony convictions and sentenced him under the habitual criminal act.

Prior to sentencing the appellant's court-appointed counsel specifically announced to the court any statements made by the appellant to the court in post conviction matters were in disregard of counsel's advice to the appellant; that the appellant was advised he might incriminate himself in making such statements.

The sufficiency of the documents presented to support sentencing under the habitual criminal act was challenged by the appellant's court-appointed counsel on the ground that the named person in the documents did not sufficiently identify the appellant. These efforts were nullified, however, by the appellant himself. The appellant in addressing his remarks to the court admitted identity by challenging the date of conviction on the 1965 second degree burglary conviction; and by challenging use of the 1962 Indiana conviction on the ground that it was a misdemeanor conviction and not a felony. Under Indiana law the second conviction was clearly shown to be a felony.

Under these circumstances it is unnecessary to determine the suffciency of the state's documentary evidence to establish the appellant's prior felony convictions. The documents clearly disclose the appellant was represented by counsel in each of the prior felony convictions, and the trial court did not err in sentencing the appellant under the habitual criminal act.

The record on appeal prepared by counsel for the appellant consists of 241 pages and indicates the cost of reproduction to be $456.91. Most of the record consists of a reproduction of the transcript in verbatim form. No effort has been made in the preparation of the record on appeal to comply with Rule No. 6 (*e*) of the Supreme Court (205 Kan. xxviii and xxix), which reads in part:

". . . For any infraction of this rule or for the unnecessary substitution by one party of evidence in question and answer form for a fair narrative statement proposed by another, the Supreme Court may withhold or impose costs as the circumstances of the case and discouragement of like conduct in the future may require; and costs may be imposed upon offending attorneys or parties."

To burden the "Aid to Indigent Defendants Fund" (see K. S. A. 1971 Supp. 22-4512) with costs of this magnitude for an unnecessarily excessive record, thereby requiring the apportionment of fees allowed to attorneys required to represent indigent defendants of this state on appeal, is unwarranted. Accordingly, counsel for the appellant is censured for his failure to comply with Rule No. 6 (*e*).

Should similar infractions of the rule occur in the future, the court will give serious consideration to the imposition of costs upon the offending attorney or attorneys.

The judgment of the lower court is affirmed.