No. 47,081

State of Kansas, *Appellant*, v. Paul G. Jackson, *Appellee*.

(515 P. 2d 1108)

Opinion filed November 3, 1973.

*Gary H. Jarchow,* Assistant District Attorney, argued the cause, and *Vern Miller,* Attorney General, and *Keith Sanborn,* District Attorney, were with him on the brief for the appellant.

*Wendell E. Godwin,* of Wichita (court-appointed), argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is an appeal by the state on a reserved question pursuant to the provisions of K. S. A. 1972 Supp. 22-3602.

The question arises from a ruling of the trial court suppressing evidence consisting of a number of automobile keys found in defendant's pocket by the arresting officer. The ruling appealed from was made after the case had been submitted to the jury and after a second request by the jury for the rereading of the testimony of two of the state's witnesses. During the second read back of the testimony the court interrupted the proceedings, made a statement to the jury that its difficulty in reaching a decision was because of

the uncertainty of the evidence and further "that the arrest was probably invalid or is invalid." The trial court then suppressed the automobile keys and subsequently sustained defendant's motion for acquittal.

The circumstances surrounding the apprehension of defendant are described by Bob O'Dell, a Cowley County deputy sheriff, who was patrolling the area around Rock in the early morning of January 24, 1971. At about 2:50 a. m., O'Dell observed the defendant, Paul G. Jackson, walking northbound on US Highway 77 a quarter of a mile north of Rock. O'Dell testified he stopped defendant soon after he first observed him. O'Dell's testimony describing the events that followed is reproduced in narrative form in the record. Omitting transcript references, his testimony on direct examination appears as follows:

". . . He proceeded to 'check the defendant out,' and asked him where he was going and where he came from as well as whether he was employed. The defendant advised him he was going to 'Oklahoma City,' had come from 'Wichita, Kansas,' did not have employment and lived in Oklahoma City.

"Deputy Sheriff O'Dell further testified that he 'frisked' the defendant and found a large quantity of 'metal' in his left pocket before taking the defendant to Winfield and booking him for vagrancy. After inquiry, the defendant told him 'it was car keys.' He had the defendant take them out and asked where he got them. The defendant responded 'on the sidewalk' and 'at Third and Hydraulic.' The deputy stated that there were about fifteen sets of keys with different car descriptions on the tags and also a few singles not on tags. He took them into his possession."

The portion of O'Dell's testimony on cross-examination, which is reproduced in the record, appears as follows:

"At the time he first saw the defendant walking along the highway, he stopped the defendant and arrested him for vagrancy, because he had made the determination that defendant was 'indigent,' which Officer O'Dell defined as being 'without visible means of support and no job, no income.' At the time Officer O'Dell arrested the defendant he told the defendant that he was charging him with vagrancy, because he was unemployed, and 'without gainful employment.' Officer O'Dell stated that he did not ask the defendant if he had been working and stated further that he did not know how recently the defendant had been working nor did he have any knowledge of any other offenses of which the defendant was suspected. The defendant was not suspected of the crime for which he was tried until after he was booked for vagrancy into the police station in Winfield, and the defendant was not charged with any other crimes by the Winfield police."

O'Dell's testimony, as set out above, is the only evidence pertaining to the arrest and search of defendant and seizure of the keys.

It should be noted that the time of arrest, with reference to the search and interrogation of defendant, is not fixed to a certainty by O'Dell's testimony.

The keys were later identified by other witnesses as having been taken during the previous evening in a burglary in the office of the McCall Motor Company in Wichita. One of the keys found on defendant fitted the ignition of a 1965 Chevrolet Convertible which was found by O'Dell and undersheriff Lezzle in a search of the area after defendant's arrest. The 1965 Chevrolet was found on a county road a quarter of a mile east of US Highway 77 and about a half-mile from where defendant was first observed. O'Dell had not been informed of the McCall burglary at the time he stopped defendant.

After his arrest, defendant was taken to Wichita and charged with the burglary of McCall's and theft of the 1965 Chevrolet.

Prior to trial several motions pertaining to the keys, including one to suppress, were filed. Apparently, those motions were heard by Judge Kline, administrative judge for the Sedgwick District Court. The motion to suppress was overruled and a motion to permit defendant to inspect the keys was sustained. Proceedings pertaining to the hearing on the pretrial motion to suppress are not reproduced in the record other than as shown by the journal entry of the court's ruling.

The case was assigned to Judge Kandt of division No. 1 for trial. It appears that once during the course of the trial and again after the defense had rested the motion to suppress was reasserted and overruled by Judge Kandt. An excerpt from the trial transcript, which is reproduced in the record, indicates that the trial was interrupted during the state's case when the trial court, apparently in the absence of the jury, interrogated O'Dell concerning his actions and determined that the original ruling of the administrative judge on suppression of the keys should be left undisturbed.

On appeal the state claims error in the trial court's suppression of the keys on two grounds. First, it is contended the keys were seized in a reasonable search regardless of the validity or invalidity of the arrest. Second, the state claims it was error to suppress the keys at trial after the administrative judge had overruled a pretrial motion to suppress.

Concerning the reasonableness of the search, the state rests its argument on *Terry v. Ohio,* 392 U. S. 1, 20 L. Ed. 2d 889, 88 S. Ct.

1868; *State v. Hazelwood,* 209 Kan. 649, 498 P. 2d 607; and K. S. A. 1972 Supp. 22-2402 of the new Kansas Code of Criminal Procedure. At this point, we should pause to point out that 22-2402, commonly known as the "stop and frisk" statute authorizes the stopping and questioning of a person in a public place by a law enforcement officer who reasonably suspects such person is committing, has committed, or is about to commit a crime. The act also authorizes a limited search of the person for weapons if the officer reasonably suspects that his personal safety requires it. The limited search authorized under 22-2402 is to be distinguished from a search incident to a lawful arrest provided for in K. S. A. 1972 Supp. 22-2501. Due to the unsettled state of the record in the instant case, we are unable to say with certainty which statute applies. However, since the state claims the "frisk" described by O'Dell is justifiable under 22-2402, we shall consider the case in the context of a "stop and frisk" situation followed by an arrest.

The state recognizes, and correctly so, that even though "stop and frisk" has now been codified in 22-2402, police conduct in a "stop and frisk" situation must be judged under the reasonable searches and seizures clause of the Fourth Amendment to the Constitution of the United States and the judicial interpretations thereof. This point was made by the United States Supreme Court in *Sibron v. New York,* 392 U. S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, in considering the reasonableness of searches and seizures under The Consolidated Laws of New York Annotated, Code of Criminal Procedure, § 180-a (now § 140-50, effective September 1, 1971). The New York statute was followed in the drafting of 22-2402. (See Judicial Council Comment appended to K. S. A. 1972 Supp. 22-2402.)

The position of the state in this appeal is put in focus by the succinct statement of the issue by the district attorney in his brief:

"The issue in this appeal, as was the issue in *Terry v. Ohio,* supra, is whether in all the circumstances of the on-the-street encounter, the appellee's personal security was violated by an unreasonable search and seizure. . . ."

We agree the issue here is the same as that in *Terry v. Ohio,* supra. However, we do not find controllable similarity in the facts of the two cases. In *Terry* the arresting officer observed the actions of Terry and codefendant Chilton for a period of more than ten to twelve minutes. Terry and Chilton were each seen strolling by a store and peering in the window five or six times. They

would join each other and a third man after these sidewalk strolls. The officer testified that after observing the elaborately casual and oft-repeated reconnaissance of the store window, he suspected the men of "casing a job, a stick-up." He considered it his duty as a police officer to investigate further and added that he feared "they might have a gun." The officer approached the three, identified himself and asked for their names. When the men "mumbled" something in response, Terry was seized and a "pat down" search of the three disclosed guns on Terry and Chilton. The search and seizure was held to be reasonable. In the instant case defendant was stopped when first observed by O'Dell who gave as his only reason "it was a common practice to check out persons on the roadway this time of night." No suspicious actions on the part of defendant were observed, nor was anything about defendant's appearance described as suspicious except that he was walking on the highway late at night, and if this fact alone aroused deputy sheriff O'Dell's suspicion he did not testify to that effect. O'Dell described no suspicious mannerisms or unusual nervousness on the part of defendant which would alarm a prudent official.

Likewise, our decision in *State v. Hazelwood,* supra, fails to support the state's position. In *Hazelwood* the arresting officers, after working a couple of unsolved burglaries, were on patrol looking for suspects about 4:10 a. m. when they saw a man, later identified as the defendant, "duck" into an alley and hide behind some vehicles, he was apprehended and a "pat down" search brought to light the items of stolen property which became the vital evidence in the subsequent prosecution. We said:

"Under these circumstances the search and seziure was reasonable, considering the early morning hour, the subject's furtive behavior and the officers' own knowledge concerning the recent commission of two burglaries in the area. Accordingly, the trial court did not err in overruling the appellant's motion to suppress the evidence." (P. 655.)

While the incident in the instant case occurred in the early morning hours there is no evidence of any furtive action of defendant or police knowledge of burglaries in the area, such as were shown by the evidence in *Hazelwood,* nor was there any suspicious conduct such as shown in *Terry.*

We have reexamined the holdings in *Sibron* and *Peters* (consolidated in *Sibron v. New York,* 392 U. S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889) which were companion cases to *Terry,* as well as the later case

of *Adams v. Williams*, 407 U. S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921, all of which deal with search and seizure or "stop and frisk" situations. The *Williams* case came under federal jurisdiction by way of habeas corpus after a state conviction was affirmed on appeal in *State v. Williams*, 157 Conn. 114, 249 A. 2d 245. In *Williams* the arresting officer, Police Sgt. Connolly, was alone in his patrol car in a "high-crime area" at 2:15 a. m. when a person known to him approached and informed him that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist. Connolly approached the vehicle to investigate and asked the occupant (Williams) to open the door; instead Williams rolled down the window. Connolly reached in and removed a loaded revolver from Williams's waist. The revolver was not visible to Connolly from outside the car, but was in the precise location indicated by the informant. Williams was then arrested for unlawful possession of a pistol. A search incident to the arrest followed in which substantial quantities of heroin were found on Williams's person and other weapons hidden in his car. Williams claimed the initial seizure of the pistol upon which the later search and seizure of the narcotics rested was not justified, and that Connolly's actions were unreasonable under the standards of *Terry*. The court decided the case within the context of *Terry*, stating in the opinion:

> "In *Terry* this Court recognized that a 'police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.' *Id.*, at 22. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. See *id.*, at 23. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. . . ." (pp. 145, 146.)

The gist of the *Williams* opinion is that the stop of a suspicious person may be reasonable if coupled with some facts known to the officer. Applying *Williams* to the instant case, O'Dell had no prior knowledge, and the stop was made because of custom rather than by reason of any suspicious conduct on the part of defendant observed by O'Dell. Neither does O'Dell's testimony indicate that defendant's responses to interrogation furnished reasonable grounds

for belief that defendant was armed or might endanger the safety of O'Dell or of others.

In the light of what has been said in the foregoing cases mentioned and discussed herein, we believe that the "stop" authorized by 22-2402 requires that a law enforcement officer must have prior knowledge of facts or observe conduct of a person which causes the officer to reasonably suspect that such person is committing, has committed, or is about to commit a crime. Further, in order to justify the search for weapons authorized under the provisions of subsection (2) of 22-2402, the officer must have prior knowledge of facts or observe conduct of the person or receive responses to the limited interrogation authorized by subsection (1) which, in the light of his experience, would cause the officer to reasonably suspect that his personal safety requires such search.

It should be kept in mind, of course, that the reasonable suspicion on the part of an officer required by 22-2402 does not rise to the level of probable cause required by the preceding section K. S. A. 1972 Supp. 22-2401, which deals with the making of an arrest.

The reasonableness of a search is, in the first instance, a substantial determination to be made by the trial court from the facts and circumstances of the case. (*Ker v. California*, 374 U. S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623.) In the light of officer O'Dell's testimony in the instant case it cannot be said the trial court erred in suppressing the evidence in question.

We next turn to the state's contention the trial court erred in suppressing the keys after the administrative judge had overruled a motion to suppress prior to trial. The state's argument on this point is based on the language of the statute dealing with motions to suppress which appears as K. S. A. 1972 Supp. 22-3216. The pertinent language appears in subsection (3) which reads:

"The motion *shall* be made before trial, in the court having jurisdiction to try the case, unless opportunity therefor did not exist or the defendant was not aware of the ground for the motion, but the court in its discretion may entertain the motion at the trial." (Emphasis supplied.)

The state says the statute makes it mandatory that the motion be made before trial, and since it was in fact made before trial and ruled on, subsequent entertainment of the motion is foreclosed. The state interprets the statute to mean that the court in its discretion could have entertained the motion at trial if it had not been

made before, but if once made and ruled on before trial that ruling is final. We do not agree in toto with the state's interpretation. We do agree that in order to protect a right to challenge the evidence in question as a matter of right the making of the motion before trial is mandatory unless opportunity therefor did not exist or unless defendant can show he was unaware of the grounds for the motion at that time. In other words, if a defendant fails to make the motion prior to trial and is unable to show lack of opportunity or unawareness he has lost his standing to challenge admissibility as a matter of right and becomes dependent upon the discretion of the trial court under the language of the last provision of subsection (3). However, contrary to the state's position, we believe the last provision referred to also authorizes the trial court, in its discretion, to reentertain the motion at trial. To interpret otherwise would be to proscribe correction of its own error by the trial court at trial or even on motion for a new trial. Normally, and the statute so contemplates, the motion, when made before trial, will be heard once and disposed of; however, if at trial new or additional evidence is produced bearing on the issue or substantially affecting the credibility of the evidence adduced at the pretrial hearing of the motion, we believe the statute authorizes reentertainment of the motion in the court's discretion. In the instant case we are not favored with the evidence produced or the circumstances surrounding the first hearing on the motion before the administrative judge. Under the circumstances we cannot say the trial court abused its discretion in reentertaining the motion and suppressing the evidence.

In view of our disposition of the foregoing points, other matters raised by the state need not be considered.

For the foregoing reasons the state's appeal is not sustained and the judgment of the trial court sustaining defendant's motion for acquittal is affirmed.