(726 P.2d 1347)

No. 58,824

STATE OF KANSAS, *Appellant,* v. GARY S. OLSON, PATRICIA R. DAVID-SON, GEORGE DAVIDSON, and RANDALL BLAKELY, *Appellees.*

Petition for review denied December 19, 1986.

Opinion filed October 23, 1986.

*Kenneth R. Smith,* assistant district attorney, *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, for the appellant.

*John C. Humpage*, of Humpage, Berger and Hoffman, of Topeka, for the appellees Patricia R. Davidson and George Davidson.

*John Ambrosio*, of Topeka, for the appellee Gary S. Olson.

*J. Richard Lake*, of Holton, for the appellee Randall Blakely.

Before BRISCOE, P.J., RICHARD W. WAHL, District Judge, assigned, and CORWIN C. SPENCER, J. Retired, assigned.

BRISCOE, J.: This is an interlocutory appeal brought by the State of Kansas pursuant to K.S.A. 22-3603. The State appeals from an order of the district court suppressing evidence seized under two search warrants.

The State raises three issues which fall within the purview of the Fourth and Fourteenth Amendments: (1) Whether defendants' allegations challenging Detective Listrom's affidavit in support of his application for a search warrant were sufficient to trigger a hearing under *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978); (2) whether the warrant affidavit was sufficient to establish probable cause once the false statements were removed; and (3) whether, under the good faith exception set forth in *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984), the evidence was improperly suppressed. We note the State does not specifically challenge the trial court's decision to excise the material it did. We affirm the trial court.

On March 12, 1985, District Court Judge James Macnish issued search warrants for two Topeka residences. The following affidavit was presented to Judge Macnish by Topeka Police Detective Randall Listrom and served as a basis for the issuance of both warrants. The bracketed portions were later determined to be false by District Judge Franklin Theis and were excised.

"I, Detective Randall K. Listrom, a narcotics officer with the Topeka, Kansas Police Department Vice-Narcotics Unit, being of lawful age and having been first duly sworn upon my oath, do depose and state:

"That I have a confidential informant, hereinafter referred to as CI. [In the past this CI has provided me with in excess of five pieces of information regarding criminal activity in the Topeka area. I have investigated this information and have found the information to be complete and accurate. This information was such that I would not suggest that a mere common member of the area's population would have access to this information.]

["I have shown to this CI, in the past, vegetation which I subjected to a Narcotest Duquenois Reagent examination. On that examination I had noted color changes indicative for the presence of marijuana. Hence I feel that this CI is familiar with the appearance of marijuana.]

["Based upon the past performance of this CI, I believe this CI to be a reliable and trustworthy person. I have no reason to suspect that this CI would ever provide me with information that the CI knew to be false.]

"The CI has advised me that a subject known to the CI as Gary Olson has been, for several years, selling marijuana. The CI knows that Olson resides at 1003 SE 26th in Topeka, Shawnee County, Kansas. The CI advised that Olson has entered into a conspiracy with a subject named George to import marijuana into Kansas from the West coast. Olson has advised the CI that Olson assists George by driving a pick up truck to the West coast, and bringing back marijuana in the vehicle. The vehicle used belongs to George. The CI knows that George resides across the street from Olson.

"Within the last few weeks George confirmed that this conspiracy existed when George told Olson, in front of the CI, that anytime Olson needed marijuana to sell Olson could get it from George. The CI further advised that, according to Olson, the majority of the marijuana is kept at George's residence, and that Olson gets the marijuana in fifteen pound increments.

"Within the last forty eight hours this CI has been in the residence of 1003 SE 26th in Topeka, Shawnee County, Kansas. While in the residence the CI was shown a quantity of vegetation which Olson represented as being marijuana. The CI stated that the vegetation appeared to be that of marijuana. The amount of vegetation displayed to the CI was, in the CI's estimation, at least one half pound. Olson told the CI that he had at least one additional half pound at the residence.

"A check of the current phone book shows the address of Olson to be 1003 SE 26th in Topeka, Shawnee County, Kansas. Furthermore, on 12-March-1985 the CI took Det. Sgt. KC Blodgett of the Topeka Police Department to the area of 26th and Virginia in Topeka, Shawnee County, Kansas. The CI pointed out 1003 SE 26th as the residence at which Olson resides. The CI also pointed out the residence on the North East corner of 26th and Virginia, said residence being the first residence North of 26th Street on the East side of Virginia. The CI advised that George resides at this residence.

"Wherefore I believe that several offenses against the laws of the State of Kansas have been committed, to wit: conspiracy to sell marijuana and possession of marijuana with the intent to sell, both as provided for by K.S.A. 65-4101 et seq. I further believe that certain items, which are evidence to these crimes, are currently located at both 1003 SE 26th in Topeka, Shawnee County, Kansas AND the first residence North of 26th Street on the East side of Virginia in Topeka, Shawnee County, Kansas.

"I would, therefore, respectfully petition the Court for a warrant authorizing the search of both 1003 SE 26th and the first residence North of 26th on the East side of Virginia, both in Topeka, Shawnee County, Kansas, and the seizure therefrom of: marijuana, items for the sale and or use of marijuana as provided for by K.S.A. 65-4150, all papers and/or documents listing out past drug transactions between George and Gary Olson, any and all papers tending to establish a business relationship for the importation or distribution of drugs between Gary Olson and George, and items that would identify all persons residing at the residences including rent receipts and personal correspondence."

One of the homes searched was the residence of Gary Olson; the other was the residence of George and Patricia Davidson. Numerous items were seized as a result of these searches, including marijuana, cocaine, and drug paraphernalia. Among the persons arrested were the four defendants: Gary Olson, George and Patricia Davidson, and Randall Blakely.

Defendants were charged with various drug related offenses and a single preliminary hearing was conducted on August 27, September 11, and September 12, 1985, before District Court Judge Matthew Dowd. During the course of this hearing, Detective Listrom was questioned by defense counsel who discovered information which defendants believed indicated Detective Listrom had included statements in his warrant application which were intended to mislead Judge Macnish into issuing a warrant. At the close of the preliminary hearing, defendants moved to suppress all of the evidence recovered under the search warrant. Although their motion was denied at this point, the defendants renewed their motion before District Judge Franklin Theis prior to trial. Judge Theis granted the motion to suppress and it is from that order that the State appeals.

Before proceeding to the merits of the constitutional issues raised, we note that "the scope of the constitutional protections afforded by the Kansas Constitution Bill of Rights, Section Fifteen and the Fourth Amendment to the United States Constitution is usually considered to be identical." *State v. Fortune*, 236 Kan. 248, 250, 689 P.2d 1196 (1984) (citing *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 [1983]). Accordingly, this court may look to decisions by the United States Supreme Court for guidance in resolving the constitutional issues raised. As another preliminary matter, we note that the State argues Judge Theis erred in considering defendants' motion to suppress since it had been previously considered and rejected by Judge Dowd at the preliminary hearing. The Kansas Supreme Court rejected a similar argument in *State v. Jackson*, 213 Kan. 219, 515 P.2d 1108 (1973). In *Jackson*, the Supreme Court concluded, under K.S.A. 22-3216, the trial court could reentertain an earlier motion to suppress which had been denied.

I. *Franks v. Delaware.*

In *Franks*, 438 U.S. at 155-56, the United States Supreme Court held:

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."

In applying the decision, the Kansas Supreme Court has held that a defendant may challenge the legality of a search warrant if the challenge is supported by allegations and an offer of proof under oath.

"The challenger has a duty to point out specifically the portion of the warrant affidavit that is claimed to be false, and a statement of supporting reasons should accompany the motion to suppress." *State v. Jacques*, 225 Kan. 38, 44, 587 P.2d 861 (1978).

In the present case, the State maintains that defendants failed to satisfy their preliminary burden and therefore were not entitled to a hearing on their motion to suppress. We are not persuaded by this argument.

Defendants filed a written motion to suppress the evidence before the trial court which included specific allegations that Detective Listrom had included false and misleading statements in his warrant affidavit. These allegations were sworn to by defense counsel in an affidavit and offer of proof. Specifically, defense counsel challenged the length and quality of Detective Listrom's relationship with the CI. According to Detective Listrom's affidavit, the CI had provided Listrom with information "[i]n the past" and "[b]ased upon the past performance of this CI, I believe this CI to be a reliable and trustworthy person." One would infer from these statements a longstanding working relationship between the informant and the detective. In fact, and according to Detective Listrom's own testimony at the preliminary hearing, Detective Listrom had arrested the CI six months before on a drug charge and had had no contact with the CI until he was again arrested on the evening of March 12, some two to three hours prior to Detective Listrom's preparation of the warrant affidavit. The marijuana that was shown to the CI "in the past" was marijuana that was seized from the CI when he was arrested and then tested in front of the CI, all occurring three hours before the warrant affidavit was prepared. The true nature of Detective Listrom's relationship with the CI was not revealed to the judge who issued the warrants.

Defense counsel further challenged the nature of the informa-

tion the CI had provided "in the past," as well as Listrom's basis for concluding the information was reliable. The extent of the information provided "in the past" by the CI was five to six names of persons the CI believed were involved in drugs. These names were supplied three hours prior to the preparation of the warrant affidavit. Listrom verified the reliability of this information and consequently the reliability of the CI by checking the criminal intelligence computer to determine if these names appeared as persons involved in drugs. According to Detective Listrom's testimony, this computer contains information from police files, as well as "any evidence or any conversations with informants, with known sources or unknown sources," and past arrest records. After this computer check was completed and further verified by checking police files, Listrom took the CI's information concerning defendants Gary Olson and George (Davidson) and used that information as the basis for the warrants in question. The nature of the five pieces of information provided to Detective Listrom by the CI, when it was provided, and how it was verified by Detective Listrom were also not disclosed to the judge who issued the warrants. Defendants satisfied their preliminary burden under *Franks* and the trial court was correct in ordering a hearing on defendants' motion to suppress.

The State does not contend that defendants failed to show any statements in the affidavit were false. Instead, the State argues that all the statements in the warrant affidavit were literally true. While perhaps true in a literal and abstract context, the statements in the affidavit certainly conveyed a false meaning to the judge who issued the warrants.

II. *Probable Cause.*

According to the United States Supreme Court in *Franks*, once the defendant establishes by a preponderance of the evidence the falsity of statements in the warrant affidavit, these statements will be removed from the affidavit and the court will reexamine the remaining statements to determine whether probable cause existed to support the warrant. If the remaining statements are insufficient to establish probable cause, the evidence seized must be suppressed. 438 U.S. at 155-56. In the present case, the trial court removed the misleading statements from the affidavit and then concluded that what remained failed to establish prob-

able cause. The court excised the statements which we have shown in brackets in paragraphs 2, 3 and 4 of the warrant affidavit. The State maintains that, even with the false statements removed, the affidavit contains sufficient evidence to support a finding of probable cause. We do not agree.

The burden of proving that the search and seizure were lawful and based upon probable cause rests upon the prosecution. *State v. Pearson*, 234 Kan. 906, 920, 678 P.2d 605 (1984). In order to determine whether probable cause exists to support a search warrant, a court must view the affidavit under the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983). This approach requires the court to make a simple, practical, commonsense decision. While an affiant seeking a warrant is no longer required to prove the informant's reliability and credibility under the "two-pronged test" set out by the United States Supreme Court in *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969), and *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964), the affiant must put forth some basis for the court to determine there is a fair probability that contraband or evidence will be found in a particular place. *Gates*, 462 U.S. at 238; *State v. Roudybush*, 235 Kan. 834, 846-47, 686 P.2d 100 (1984).

In cases lacking evidence of the informant's reliability or credibility, the United States Supreme Court has recognized the value of corroborating the informant's tip by independent police investigation. *Gates*, 462 U.S. at 241. See *Jones v. United States*, 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725 (1960); *Draper v. United States*, 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959); *State v. Roudybush*, 235 Kan. at 847. In order to establish probable cause there must be some indication that the informant's tip is accurate. In *Gates*, for example, the police received the following anonymous letter:

" 'This letter is to inform you that you have a couple in your town who strictly make their living on selling drugs. They are Sue and Lance Gates, they live on Greenway, off Bloomingdale Rd. in the condominiums. Most of their buys are done in Florida. Sue his wife drives their car to Florida, where she leaves it to be loaded up with drugs, then Lance flys down and drives it back. Sue flys back after she drops the car off in Florida. May 3 she is driving down there again and Lance will be flying down in a few days to drive it back. At the time Lance drives the car back he has the trunk loaded with over $100,000.00 in drugs. Presently they have over $100,000.00 worth of drugs in their basement.

" 'They brag about the fact they never have to work, and make their entire living on pushers.

" 'I guarantee if you watch them carefully you will make a big catch. They are friends with some big drug dealers, who visit their house often.

" 'Lance & Susan Gates
'Greenway
'in Condominiums' " 462 U.S. at 225.

Before applying for a search warrant, however, the police conducted an extensive investigation to corroborate the information contained in the letter. The police verified the Gates lived where the informant said they lived and had made reservations to fly to Florida. Surveillance disclosed Mr. Gates stayed in a motel room registered in his wife's name and that they left Florida in their own car and returned to Chicago. Based on the anonymous letter and the police investigation, a warrant was issued and Mr. and Mrs. Gates were arrested. The Illinois trial court suppressed the evidence and was affirmed by the Illinois Supreme Court. The United States Supreme Court, reversing the Illinois Supreme Court, held the subsequent police investigation provided a sufficient basis for concluding there was a fair probability that contraband or evidence would be discovered in the Gates' home and car.

The facts in the present case do not support a similar conclusion. By the removal of the bracketed statements, any evidence of the informant's reliability or credibility is likewise removed and, under *Gates*, we must look to independent police investigation for corroboration of the informant's statements. The warrant affidavit with the bracketed statements removed contains no information upon which the trial court could conclude there was a fair probability that contraband or evidence would be found. The police made no effort to independently investigate or corroborate the informant's statements. Here, the independent police investigation consisted of checking the phone book for the address of Gary Olson and having the informant point to the houses where he believed Gary Olson and George (Davidson) lived. The address of George's house could not be verified from the street, so the only information supplied by the informant which was corroborated by the police was the fact that Gary Olson lived at 1003 S.E. 26th, Topeka, Kansas. The trial court was correct in concluding that under the totality of the circumstances there was not probable cause to support the warrant.

III. *United States v. Leon.*

The State argues application of the exclusionary rule in the present case is inappropriate. The State appears to suggest that this case is controlled by the United States Supreme Court's decision in *United States v. Leon*, 468 U.S. 897. A brief review of the decision demonstrates this issue is without merit.

In *Leon*, the court held that the exclusionary rule should not be applied to suppress evidence in cases where a court issued a warrant without probable cause as long as the police acted in good faith and did not obtain the warrant by false statement. The court specifically held that suppression of the evidence remained the appropriate remedy if the warrant was issued based on misleading information contained in the warrant affidavit.

The State suggests that the present facts fall within this "good faith" exception because Detective Listrom's statements were literally true. This argument is groundless. Any attempt by the State to suggest Detective Listrom did not intend to mislead the court into issuing a warrant is discredited by Detective Listrom's own testimony. In addition, a review of the preliminary hearing transcript evidences a second attempt to obscure the truth and mislead the court. The record before us is adequate to sustain the trial court's finding that Detective Listrom acted in bad faith by intentionally misleading the court in his warrant affidavit. The trial court was correct in its decision to suppress the evidence seized.

Affirmed.