No. 63,414

STATE OF KANSAS, *Appellee*, v. TIMOTHY W. POTTER, *Appellant*.

(785 P.2d 989)

 Opinion filed January 19, 1990. 

*Arthur H. Davis*, of Busch, Johnson & Davis, of Wichita, argued the cause and was on the brief for appellant.

*Debra S. Byrd*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, *David M. Bax*, legal intern, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: The issues for review relate to a car stop and the K.S.A. 22-2402 concept of "reasonable suspicion" prior to defendant Timothy Potter's arrest.

Potter contends: (1) The arresting officer did not have reasonable suspicion to stop the car as required by K.S.A. 22-2402; and (2) the stop, which resulted in his arrest, was invalid.

Potter was convicted of aggravated robbery, K.S.A. 21-3427. The trial court denied Potter's pretrial motions to quash his arrest and to suppress the evidence seized and the statements he made.

We affirm the trial court. The stop and the search that followed were based upon reasonable suspicion. The provisions of K.S.A. 22-2402 were not violated.

### Facts

At approximately 2:00 a.m. on February 15, 1988, a convenience store in north Sedgwick County was robbed by two men dressed in camouflage suits and with black greasepaint on their faces. Joseph Lang, a Sedgwick County deputy sheriff, received

the report of the robbery over his radio. Lang was assigned to the southeastern part of Sedgwick County during the late night hours of February 14 and the early morning hours of February 15.

Shortly before 4:00 a.m., Lang was patrolling the area of South 47th and Clifton when he noticed a Chevrolet Camaro which he thought was "suspicious." He testified that the area of 47th and Clifton had been subject to gas run-offs, vandalism, and auto thefts. During a ten-minute period, Lang noticed a Camaro pass through a Kwik Shop parking lot and drive through the parking lot of a small shopping center several times. The Kwik Shop was open; however, all the businesses in the shopping center were closed. He also noted that the car circled around several other businesses which were on the street. In Lang's opinion, the persons in the vehicle were either lost or engaged in some type of criminal activity.

Lang pulled up behind the vehicle as it turned onto a residential street and noticed that the vehicle did not have a license tag. Although the vehicle did have a piece of paper in the rear window, the rear window was fogged over and, therefore, he could not tell what the paper was. Lang turned on his red lights and the vehicle pulled over. Lang testified that, although a temporary permit is six inches wide, due to the slant of the rear window of the Camaro, the slip of paper appeared to be only two to three inches wide. As Lang approached the vehicle, he discovered that the slip of paper was, in fact, a valid 30-day permit. As he looked into the rear window, Lang noted that the person in the back seat was wearing a camouflage outfit and had black greasepaint on his face. Lang then noticed that the individual seated in the front passenger seat was also dressed in camouflage and had black greasepaint on his face.

Remembering the previous radio report, Lang stepped back from the vehicle, drew his revolver, and told the occupants of the vehicle to place their hands on the ceiling of the vehicle while he called for backup. The previous radio report had stated that the robbers were armed with a knife and what appeared to be a .22 caliber pistol.

Potter was identified by Lang as the person in the front passenger seat of the car, dressed in a green camouflage shirt and pants and with black greasepaint on his face.

Lang testified that he did not observe any moving violations prior to stopping the vehicle.

Potter's motion to suppress evidence seized and statements made and his motion to quash his arrest were denied. The parties entered into a stipulation of facts. The relevant portions have been set out in the opinion.

## K.S.A. 22-2402 and Reasonable Suspicion

K.S.A. 22-2402 states:

"(1) Without making an arrest, a law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a crime and may demand of him his name, address and an explanation of his actions.

"(2) When a law enforcement officer has stopped a person for questioning pursuant to this section and reasonably suspects that his personal safety requires it, he may search such person for firearms or other dangerous weapons. If the law enforcement officer finds a firearm or weapon, or other thing, the possession of which may be a crime or evidence of crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person."

In his motion to suppress and motion to quash before the trial court, Potter argued that the arrest was in violation of his Fourth and Fifth Amendment rights under the United States Constitution. In his appellate brief, he does not raise the constitutional argument but does contend that Lang did not have reasonable suspicion as required by K.S.A. 22-2402, and, therefore, the stop was invalid.

Both parties cite *State v. Jackson*, 213 Kan. 219, 222, 515 P.2d 1108 (1973), in which we stated, "[E]ven though 'stop and frisk' has now been codified in 22-2402, police conduct in a 'stop and frisk' situation must be judged under the reasonable searches and seizures clause of the Fourth Amendment to the Constitution of the United States."

In *Jackson*, the defendant was stopped by a deputy sheriff as he was walking along a deserted stretch of highway at approximately 3:00 a.m. Upon searching the defendant, the deputy discovered about fifteen sets of car keys in the defendant's left pocket. The deputy arrested the defendant for vagrancy. The keys

were discovered to have been burglarized from a car dealership and defendant was subsequently charged with burglary.

We observed that, although the incident occurred early in the morning, there was no evidence presented that there had been burglaries in the area and defendant did not act in a furtive manner. His conduct was not suspicious. We held that the stop authorized by K.S.A. 22-2402 requires that a law enforcement officer must have prior knowledge of facts or observe conduct of a person which causes the officer to reasonably suspect that such person is committing, has committed, or is about to commit a crime. In order to justify the search for weapons authorized under the provisions of subsection (2) of 22-2402, the officer must have prior knowledge of facts or observe conduct of the person or receive responses to the limited interrogation authorized by subsection (1) which, in the light of his experience, would cause the officer to reasonably suspect that his personal safety requires such search. 213 Kan. at 225.

We stated:

"The reasonableness of a search is, in the first instance, a substantial determination to be made by the trial court from the facts and circumstances of the case. [Citation omitted.] In the light of officer O'Dell's testimony in the instant case it cannot be said the trial court erred in suppressing the evidence in question." 213 Kan. at 225.

In the case at bar, although Lang did not at first associate the Camaro with the earlier robbery in north Sedgwick County, he testified that the area in which he saw the Camaro had previously been subject to vandalism and other crimes. In addition, the Camaro drove through the parking lot of a shopping mall in which all the businesses were closed. It also drove through the parking lot of another business that was open, without stopping.

In *State v. Epperson*, 237 Kan. 707, 703 P.2d 761 (1985), a Wichita police officer was patrolling an area that had been the site of several recent burglaries when he noticed an expensive automobile, with two occupants, legally parked on the street. This court found that the officer's actions constituted a "stop" and that the trial court was correct in its determination that the stop was not based on a reasonable or articulable suspicion of criminal activity. 237 Kan. at 713.

The State and Potter both cite *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In *Terry*, a plainclothes detective noticed the defendant and another man. The behavior of the two men was described as follows:

"[The detective] saw one of the men leave the other one and walk southwest on Huron Road, past some stores. The man paused for a moment and looked in a store window, then walked on a short distance, turned around and walked back toward the corner, pausing once again to look in the same store window. He rejoined his companion at the corner, and the two conferred briefly. Then the second man went through the same series of motions, strolling down Huron Road, looking in the same window, walking on a short distance, turning back, peering in the store window again, and returning to confer with the first man at the corner. The two men repeated this ritual alternately between five and six times apiece—in all roughly a dozen trips." 392 U.S. at 6.

The United States Supreme Court found that the detective had reasonable grounds to believe that the two individuals were "casing" the store for a holdup and that he was therefore justified in detaining the two men and patting them down for weapons. The activity observed by Lang in Potter's case is sufficient to invoke the application of the *Terry* rule. The instant case activity is characterized as more suspicious than the behavior observed either in *Jackson* or in *Epperson*.

Potter's case carries a distinguishing factual situation from *Jackson* and *Epperson*. Deputy Lang had reason to believe that the vehicle in which Potter was a passenger was not properly tagged. Lang testified that he did not turn on his lights to pull the car over until he had ascertained that there was no permanent tag on the vehicle. He could not determine if there was a temporary permit attached to the rear window.

In *Delaware v. Prouse*, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979), the United States Supreme Court held:

"[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion."

Deputy Lang had reasonable suspicion pursuant to K.S.A. 22-2402. His initial stop of the vehicle was therefore valid.

Affirmed.